# DILLIS A. BROCKWAY

*v.*

# WARREN B. ROWLEY *et al.*

1. CONTRACT—*where parties furnish stock in an adventure, the profits to be divided and the stock to be returned, whether it means a return of the identical articles.* Where the owner of a farm let the same, with various descriptions of other property, and the tenants were to furnish property of the same description, all of which they were to feed from the products of the farm, and care for, and at the end of the year they were to divide the sales of the proceeds of the farm and stock in a certain proportion, and the tenants were then to "draw out the same property they put in," and return to the landlord the "stock, tools, hay and grain belonging" to him, keeping the tools in repair: *Held,* that the true construction of the contract was not that the tenants should return the identical articles they received, but a part only in kind; that tools and work horses from which there could be no natural increase, were to be returned in kind, and that, as to the stock, such as hogs, calves, chickens, etc., from which profits were expected to be realized, the tenants were to return stock of the same kind and description, of value equivalent to what they received.

2. APPEAL *to Supreme Court—right to dismiss waived by joinder in error.* After the appellee has joined in error on appeal to this court, it will be too late to urge grounds for dismissing the appeal.

3. INJUNCTION—*dismissal of bill asking for other relief on filing of answer.* On bill for an injunction and for an account between partners in an adventure, the circuit court, upon the answer of the defendants, dissolved the injunction and dismissed the bill: *Held,* that the court erred in dismissing the bill on the answer; it should have been retained for the purpose of stating the account.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, for the appellant.

Mr. F. GOODSPEED, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Will circuit court, having two objects, the one to restrain defendants therein from disposing of certain property of complainant which they held as

100          BROCKWAY *v.* ROWLEY *et al.*          [Sept. T.

Opinion of the Court.

tenants of complainant under a written lease containing various stipulations.

The defendants answered the bill, and on the coming in of the answer, the court modified the original injunction, and, on further consideration, dissolved the injunction and dismissed the bill.

To reverse that decree the complainant appeals.

Complainant was the owner of a farm in Peotone township, in Will county, with various descriptions of personal property upon it, all which, as specified in the lease, he let to the defendants for one year, and was left upon the farm by appellant as stock, as his portion of the capital stock, the tenants putting in some property of the same description and their labor, as their portion of the capital stock.

The whole controversy hinges upon the construction of the contract, mainly upon this clause of it:

" The party of the second part agrees to take the above said farm, stock, tools, etc., on the following conditions: the above mentioned stock, together with four horses, one cow, one boar hog, 12 hens, (belonging to the said party of the second part,) to be fed from the products of the farm, and divide the sales of the proceeds of said farm and stock in the following manner: The party of the first part receives (5-12ths) five-twelfths, and the party of the second part receives (7-12ths) seven-twelfths, and return, at the expiration of the time, to the party of the first part, stock, tools, hay and grain belonging to the said party of the first part as above described, keeping the tools in repair."

By another stipulation in the lease, the lessees, the party of the second part, were "to draw out (at the expiration of the lease) the same property they put in."

Appellant contends that, by the true construction of the above clause, there should be returned to him all the property he put in, and that defendants should draw out the property

they put in—that is, as we understand the argument, the identical property ; and that the proceeds to be derived of the farm and stock were the crops raised on the farm, and the proceeds of the stock were the butter, eggs, calves, pigs and chickens raised or made from them—that those only were to be divided.

The claim of appellees is, that not only these are to be taken as the proceeds of the stock, but also the pork made from the hogs and the growth of the young stock; that the clause, that the party of the second part shall return, at the expiration of the term, to the party of the first part, "stock, tools, hay and grain belonging -to the party of the first part, as above described," means, not that they should return the same articles they received, but a part only in kind.

This, we think, is the true construction of the contract. The tools and work horses, from which there could be no natural increase, were to be returned in kind, but if a tool was destroyed, one returned equally as valuable would fill the contract.

It is not at all probable, in reading this contract, any intelligent man would have entered into it without the expectation and reasonable hope of some profit to be derived from it.  It could scarcely be expected that these tenants would feed their grain and hay to this stock, and which they had to make good to appellant at the end of the term, and they derive no advantage therefrom.

The intention of the parties to a contract is the controlling element in it.   From the terms used by these parties, we infer the intention of appellant was that he should have returned to him the capital he had invested, some of it to be returned in kind, another portion of it in value.   Suppose appellant's stock consisted of double eagles of the coinage of 1850, would not a return to him of the same number of double eagles of a different coinage, but from the same mint, be a performance?   Or, if the return was made in single eagles of the coinage of the same mint, would not that be full performance?

This contract was made in January, 1871, and all the stock furnished by appellant was to be fed by appellees. Could it have been in the contemplation of these parties, and is it apparent from the language of the contract, construed by the circumstances, that these hogs were not to be marketed? Is it usual among farmers to carry hogs over more than one winter? The term "fed" has a well understood meaning when applied to cattle or hogs, and it is, to be made fit for market by feeding. What advantage could it be to either of the parties that the hogs should be fed from year to year, if not to fit them for market? To keep them alive simply, could not have been the object. So with the young cattle—they were to be fed that their growth might be promoted, and their additional weight thereby was increase in which the tenants had a right to participate.

A careful consideration of the contract satisfies us that its true meaning is, that the same description of stock which appellant put into this concern was to be returned to him at the end of the term—that is to say, hogs each of the weight of one hundred pounds, pigs weighing from fifteen to twenty pounds, and ten yearlings of equivalent value.

It is too plain to be disputed, that, by the terms of this contract, appellees were to have their stipulated portion of the benefit of the increase of all the stock left upon the place. The very fact that they were to pay seven-twelfths of the taxes upon all of it, forces this conclusion.

The point made by appellees, that the appeal should be dismissed, is inopportune. They have joined in error and gone to the merits.

As the bill prays for an account, it should have been retained for that purpose. It was error, on the defendants' own showing, to dismiss the bill, and for this error the decree must be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*