## P. H. McCormick, Defendant in Error, v. Frank M. Higgins and Cora Higgins, Plaintiffs in Error.

### Gen. No. 5,948.

1. APPEAL AND ERROR, § 1069*—*joinder in error.* The filing of briefs and arguing a cause upon the merits are equivalent to a formal joinder in error.

2. APPEAL AND ERROR, § 1074*—*effect of failure to join in error.* The Practice Act of 1907 (Hurd's R. S. 1913, ch. 110, § 108, J. & A. ¶ 8645) requires a case to be treated as if error had been joined, where error has been assigned and the opposite party does not plead in proper time.

3. APPEAL AND ERROR, § 1073*—*effect of joinder in error.* A joinder in error does not bar pleas, but on the contrary, pleas prevent a subsequent joinder in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CLXXXX 16

4. APPEAL AND ERROR, § 1073*—*effect of joinder in error.* A joinder in error to an error assigned is, in effect, a demurrer to such assignment.

5. APPEAL AND ERROR, § 1145*—*when pleas constitute abandonment of joinder in error.* The subsequent filing of pleas in legal effect constitutes an abandonment of a joinder in error to the assignments to which the pleas are directed.

6. APPEAL AND ERROR, § 1783*—*what constitutes confession of errors.* Where pleas in bar are filed to a writ of error and the pleas are not sustained as bad in law upon demurrer, or as not supported by proof upon trial, they confess the errors assigned, and the judgment or decree must be reversed, whether the supposed errors assigned do in fact exist upon the record or not, and the court which finds the pleas insufficient will not consider whether the errors are justly assigned or not; and, on the other hand, if the pleas are sustained, the judgment or decree must be affirmed.

7. APPEAL AND ERROR, § 1783*—*effect of plea of release of errors.* Under the Practice Act of 1907 (Hurd's R. S. 1913, ch. 110, § 109, J. & A. ¶ 8646), as an exception to the general rule, a plea of release of errors adjudged bad or not sustained does not deprive the defendant of the right to join in error.

8. APPEAL AND ERROR, § 1145*—*pleading to writ of error.* Whatever the rule may have been at ancient common law or in other jurisdictions, the practice in this State permits several pleas and several replications to pleas to be made to a writ of error.

9. APPEAL AND ERROR, § 1145*—*power to allow additional pleas to writ of error.* As more than one plea can be filed to assignments of error, and as amended pleas can be filed thereto by leave of court, it follows that power exists in the court to permit additional pleas to be filed.

10. JUDGMENT, § 281*—*when statutory limitation against vacating decrees begins to run.* A decree in a foreclosure suit against one served by publication is not final, and the statute of limitations does not begin to run until either one or three years after the entry of the decree, depending upon whether defendant received the notice required to be sent him by mail, since a defendant or his successor in interest may within one year after notice in writing given him of such decree, or within three years after such decree, if no such notice has been given him, appear and be heard and permitted to answer.

11. APPEAL AND ERROR, § 625*—*statutory limitations for writ of error.* Where pleas are treated as admitting that a defendant did not receive written notice of a decree of foreclosure, the decree was not final until three years thereafter, and the Practice Act of 1872, as amended in 1877, § 85, gave them five years within which

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to sue out a writ of error, or eight years in all, and constituted a bar in the case in question.

12. APPEAL AND ERROR, § 625*—*statutory limitations for writ of error.* Under the Practice Act of 1907 (Hurd's R. S. 1913, ch. 110, § 117, J. & A. ¶ 8654), three years is fixed as the limit for suing out a writ of error, except where the defendant is an infant, *non compos mentis* or under duress, when a decree is entered.

13. PLEADING, § 11*—*when allegation of certain length of time includes smaller length of time.* A plea that a certain thing was not done within eight years before a certain date, includes an allegation that it was not within four or six years before that date, in determining a statutory bar to a suit.

14. APPEAL AND ERROR, § 1070*—*effect of a good plea to assignment of error.* One good defense defeats an action, so that if one plea is good the assignments of error to which such plea is directed are defeated.

15. JUDGMENT, § 252*—*when record may be corrected after the term.* Where an order of service in a suit for foreclosure showed defendants to be residents of "Geneva Lake, Wisconsin," and the affidavit of nonresidence stated that defendants resided in the city of "Lake Geneva" in said State, *held* that the court had jurisdiction to amend the order to correspond with the affidavit after the expiration of the term and after a writ of error was barred by the statute of limitations.

16. MORTGAGES, § 393*—*when debt becomes due.* Where a mortgage, given to secure a note due five years after date with interest at six per cent. per annum until paid, provided that if default be made in the payment of interest on the note at any time the whole principal and interest should become due at the option of the mortgagee, *held,* upon such default in the payment of interest, a bill to foreclose would properly lie after the expiration of a year, although nothing in the note standing alone indicated that it had fallen due.

17. NOTARIES, § 8*—*effect of failure to file memorandum of appointment.* Where an affidavit of nonresidence of defendants was sworn to before a notary public before a memorandum of his appointment had been entered in the office of the county clerk, as required by statute (Hurd's R. S. 1913, ch. 99, § 5, J. & A. ¶ 7841), *held* the notary's failure thus to comply with the statute did not go to the validity of the foreclosure in question.

18. PLEADING, § 321*—*verification before an attorney.* While the practice of verifying papers in a cause before a notary public who is an attorney therein is disapproved, yet it is not reversible error.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

19. AFFIDAVITS, § 3*—*validity of oath administered by solicitor.* Where a decree of foreclosure allowed a solicitor's fee, pursuant to a mortgage, and it was sought to set aside the decree over eight years after it was entered on the ground that the solicitor was, by reason of his fee, such a party in interest as to invalidate the affidavit sworn to before him upon which the decree by publication was based, *held* the attacks upon the affidavit would not be sustained, as the entire sum was directed to be paid to complainant, and the right of the solicitor to his fee depended upon his contract with his client and not upon the provisions of the mortgage.

20. EVIDENCE, § 16*—*judicial notice of location of city.* The court will take judicial notice that a city named is in a certain county of the State.

21. NEWSPAPERS, § 1*—*what constitutes.* Where a publication is called in the certificate of publication the "Weekly Fair Dealer," and the service order finds that it is a paper of general circulation published in a certain city, it is sufficiently designated as a newspaper to satisfy the statute.

22. NOTICE, § 58*—*when finding sufficient to show publication in proper county.* A finding that a newspaper is published in a certain county is sufficient to show that it was "printed" in such county, as its publication satisfies the spirit of the requirements of the statute.

23. MORTGAGES, § 375*—*grounds for strict foreclosure.* Where mortgaged premises are worth no more than the mortgage debt and the debtor is insolvent, and the creditor is willing to take the property in satisfaction of the debt and the costs, it is proper to decree a strict foreclosure.

24. MORTGAGES, § 375*—*evidence warranting strict foreclosure.* Evidence *held* sufficient to warrant a decree of strict foreclosure.

25. MORTGAGES, § 71*—*merger of oral agreement in writing.* At the time of giving a note and mortgage to secure it, oral and contemporaneous arrangements are merged in the papers which the parties execute.

26. MORTGAGES, § 375*—*evidence insufficient to open decree of strict foreclosure.* Evidence *held* insufficient upon the merits to open up a decree of strict foreclosure eight years after rendition.

Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 13, 1914. Certiorari denied by Supreme Court (making opinion final).

BUTTERS & CLARK, for plaintiffs in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

H. M. KELLEY, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

On May 5, 1904, Frank M. Higgins and Cora, his wife, executed and delivered to P. H. McCormick a mortgage on an undivided one-eleventh of certain pieces of real estate in LaSalle county, Illinois, to secure the payment of a note for the principal sum of $1,622.33, and the same was duly recorded. Thereafter on July 29, 1905, McCormick filed against Higgins and his wife, Cora, a bill in the Circuit Court of LaSalle county for a strict foreclosure of said mortgage, it being charged that Higgins was in default in the payment of interest and that the mortgaged property had thereby become defaulted and that the property was scant security for the debt and that Higgins was financially unable to pay the debt, and that in the undivided condition of the property the value of the property mortgaged was wholly insufficient to pay the debt and costs. There was service upon the defendants by publication and by mailing of notice, and certificates of publication and of mailing of notice were filed in the cause. There was also filed a summons for the defendants to the sheriff of LaSalle county, with his return thereon that said defendants were not found in his county. On October 12, 1905, at the return term, an order was entered finding service and jurisdiction, and entering the default of the defendants, and taking the bill as confessed and referring the cause to the master to report proofs and findings. Thereafter the master filed a report of proofs taken before him and of his findings therefrom, and including the finding of default in the payment of interest, and that the whole sum secured by the note was due, and finding the amount due; and that Higgins, the maker of the note, was insolvent, and that the mortgaged property was scant security for the amount due, and that a decree

of strict foreclosure should be entered. On October 20, 1905, a final decree was entered, finding due the complainant, including solicitor's fees, $1,863.47, and that McCormick was willing to take the premises in full satisfaction of the amount due on the note and the costs; and decreeing that if the said sum with interest and costs be paid within ninety days, McCormick should reconvey the premises to Higgins and discharge the mortgage of record, but that in default of his paying that sum within that time, the defendants be barred and foreclosed of all equity of redemption, and that McCormick then be let into possession of the premises. On February 19, 1906, McCormick filed in said cause a petition stating that the time had elapsed and that no payment had been made and that he had paid the costs, and asking that an order be entered barring defendants of all right in the property; and on that day there was a hearing and a supplemental order or decree finding the facts and barring Higgins and his wife of any right in the premises, and bestowing full title upon McCormick the same as though conveyed to him by a proper deed by Higgins.

On January 31, 1914, McCormick filed in said cause a motion to redocket the cause and to amend the order of service of October 12, 1905, in the particulars set out in said motion, and he proved due service of notice of said motion upon Higgins and wife, and they appeared by their solicitor and moved the court to set aside the default and all orders, decrees and proceedings entered in said cause. Both motions were thereupon heard upon proofs presented, and afterwards on February 19, 1914, the motion to amend the service order was granted, and the motion to vacate the default and orders and decrees in the cause was denied, and Higgins and wife obtained a certificate of the evidence produced at that hearing.

Thereafter on April 7, 1914, Higgins and wife filed in this court a complete record of said cause, with

thirteen assignments of error thereon, and on the same day McCormick filed his appearance in writing in this court in said cause. The cause has been treated as if a writ of error issued from this court on April 7, 1914, but, in fact, no writ of error was issued, but the record filed on that date was treated as equivalent to a return to a writ of error. It is stated in a type-written brief for Higgins that McCormick filed a joinder in error on April 7th, but this is a mistake. What he filed was an entry of appearance and a waiver of service of process, which process would have been a scire facias to hear errors assigned. On April 9th, by leave of court, Higgins and wife filed briefs instanter. McCormick filed briefs on April 18, 1914. The case was submitted on briefs and oral arguments on April 29th. The briefs for McCormick raised the defense of the statute of limitations, but at that time he had no plea on file presenting that defense. On May 7th, he asked leave to withdraw such parts of his brief as purported to answer the third, fourth, fifth, sixth, seventh, tenth and eleventh assignments of error and to file instanter a plea or pleas of the statute of limitations as to said assignments of error. That motion was granted, and he filed two pleas to said assignments of error. Plaintiffs in error filed a demurrer to said pleas, and on their motion we heard oral arguments upon said demurrer on May 21st. Defendant in error then entered his motion to amend said two pleas by striking out the word "three" before the word "years" wherever that occurred in said pleas, and inserting the word "five." We denied the motion for leave to so amend said pleas, but granted leave to file additional pleas by the following Monday, and defendant in error did file additional pleas to the same assignments of error; and on motion of plaintiffs in error their demurrer on file was ordered to stand to said additional pleas. The cause was submitted on the demurrer. This was all at the April term. Thereafter on July 31, 1914, in vacation, plaintiffs in error

entered their motion for leave to withdraw their demurrers as to said additional pleas, and to vacate and set aside the order granting leave to file said additional pleas, and moved to strike said additional pleas from the files and to reverse the decree; and said motion was argued by each side upon typewritten briefs. It is contended by plaintiffs in error that nothing was due upon the note when the bill to foreclose was filed and that that fact appeared on the face of the papers; that the affidavit for publication was insufficient to confer jurisdiction because it was sworn to before a notary public, a memorandum of whose appointment had not been entered with the county clerk, and because he was a solicitor in the cause; that the order of service was insufficient; that the proof before the master did not show sufficient to authorize a decree of strict foreclosure; that the court had no jurisdiction in 1914 to amend the service order; that the proofs were insufficient to authorize the amendment which the court then made; and that under the proofs then presented by plaintiffs in error, the decree should have been vacated. It is also contended by plaintiffs in error that in a court of appeal the court has no power to permit more than one plea to be filed to a writ of error, nor to permit any plea to be filed after joinder in error unless the latter is withdrawn; that where two pleas have been filed and demurred to, the court has no power before deciding the demurrer to them to permit them to be amended or to permit additional pleas to be filed; that the additional pleas must therefore be stricken from the files; that the two pleas first filed are insufficient, and that therefore the assignments of error to which said first two pleas were directed are confessed, and a reversal must follow.

The pleas were in bar of assignments of error Nos. 3, 4, 5, 6, 7, 10 and 11. The third assignment of error assailed the action of the Circuit Court in entering

the original decree; the fourth, the finding of jurisdiction and entering of the default; the fifth, the finding that the defendants were in default in paying either interest or principal on the note; the sixth assignment was that the decree confirming the master's report and ordering a strict foreclosure was not supported by the evidence; the seventh, that said decree is contrary to law; the tenth, that the decree was without notice to the defendants, and is contrary to law, and is not supported by the competent evidence, and is contrary to equity and is unconscionable; the eleventh, that the court erred in confirming the master's report because entered without notice to the defendants and without notice of the hearing before the master.

Plaintiffs in error contend that defendant in error could not plead because he had not withdrawn his joinder in error. There was no formal joinder in error, but he filed briefs upon the merits and argued the cause upon the merits. This was equivalent to a formal joinder in error. *De Beukelaer v. People,* 25 Ill. App. 460; *Ferrias v. People* 71 Ill. App. 559; *People v. Rudorf,* 149 Ill. App. 215. But these rulings are in reality based upon section 79 of the Practice Act of 1872 (J. & A. ¶ 8645), and section 108 of the Practice Act of 1907 (J. & A. ¶ 8645), which require the case to be treated as if error has been joined if the opposite party does not plead in proper time. If the defendant in error could not file pleas without leave of court, he obtained such leave of court; and this was a proper exercise of discretion, for his briefs showed that he in fact relied upon the statute of limitations as a defense to the assignments of errors above recited. A joinder in error does not bar pleas, but, on the contrary, pleas prevent a subsequent joinder in error. A joinder in error to an error assigned is in effect a demurrer to such assignment. *Austin v. Bainter,* 40 Ill. 82; *Farwell v. Sturges,* 165

Ill. 252; *Cass v. Duncan,* 260 Ill. 228. In asking leave to file pleas to the assignments above specified, plaintiff in error asked leave to withdraw his brief as to those assignments of error. It is insisted that this did not withdraw his joinder in error on those assignments. It was no doubt so intended, but, if not, the filing of the pleas was in legal effect an abandonment of the joinder as to those assignments to which the · pleas were directed.

Where pleas in bar are filed to a writ of error and said pleas are not sustained because bad in law upon demurrer, or because not supported by the proofs upon trial, they confess the errors assigned, and the judgment or decree must be reversed, whether the supposed errors assigned do in fact exist upon the record or not, and the court which finds the pleas insufficient will not consider whether the errors are justly assigned or not; and, on the other hand, if the pleas are sustained, the judgment or decree must be affirmed. *Austin v. Bainter, supra; Clapp v. Reid,* 40 Ill. 121; *Ruckman v. Alwood,* 44 Ill. 183; *Holt v. Rees,* 46 Ill. 181; *Thornton v. Houtze,* 91 Ill. 199; *Page v. People,* 99 Ill. 418; *International Bank of Chicago v. Jenkins,* 104 Ill. 143; *Mahony v. Mahony,* 139 Ill. 14; *Beardsley v. Smith,* 139 Ill. 290; *Martin v. Commissioners of Scotland Tp.,* 150 Ill. 158; *Schaeffer v. Ardery,* 238 Ill. 557; *Peterson v. Manhattan Life Ins. Co.,* 244 Ill. 329; *George v. George,* 250 Ill. 251. There is now one exception to this rule. Under section 109 of the Practice Act of 1907 (J. & A. ¶ 8646), a plea of release of errors adjudged bad or not sustained does not deprive the defendant of the right to join in error. *Schaeffer v. Ardery, supra; Cass v. Duncan, supra; Lott v. Davis,* 262 Ill. 148. It is contended that the court had no power to permit more than one plea to be filed. Whatever the rule may have been at ancient common law or is in other jurisdictions, the practice in this State permits several

pleas and several replications to pleas to be filed to a writ of error. *Austin v. Bainter, supra; Corwin v. Shoup,* 76 Ill. 246; *Thornton v. Houtze, supra; Page v. People, supra; Trapp v. Off,* 194 Ill. 287; *Schaeffer v. Ardery, supra; Lott v. Davis, supra.* In *Austin v. Bainter, supra,* there were two pleas, to which plaintiff in error demurred, but, before the court rendered a judgment upon the demurrer, leave was given defendant in error to file amended pleas. Amended pleas to a writ of error therefore can be filed, and it may well be that defendant in error was entitled to have his motion of May 21st, to amend his pleas, granted, but the same object was accomplished by permitting him to file additional pleas. As more than one plea can be filed to assignments of error, and as amended pleas can be filed thereto by leave of court, it must follow that power exists in the court to permit additional pleas to be filed.

The first plea, after setting out the respective dates when said order of default, decree of foreclosure and decree of confirmation were entered, alleged that plaintiff in error did not sue out this writ of error or assign said specified errors within five years after said orders and decrees were entered. The second plea averred that said alleged errors were committed by the Circuit Court of La Salle county more than five years prior to the suing out of this writ of error, and that the same are barred by the statute of limitations. The first additional plea set out the respective dates of said orders and decrees, namely, October 12, 1905, October 20, 1905 and February 19, 1906, and alleged that plaintiffs did not sue out said writ of error nor assign said errors within six years after said errors are alleged to have been committed, nor within six years after any order or decree on which error is so assigned, nor within six years after February 19, 1906, the date of the last order in said cause. The second additional plea averred that the alleged errors

so assigned were committed by the Circuit Court of
LaSalle county more than three years before April 7,
1914, the date when plaintiffs in error sued out their
writ of error in this court; that plaintiffs in error were
not served personally in said cause, but by publica-
tion, and that said judgment did not become final until
February 19, 1909, and that more than three years
from February 19, 1909, elapsed before the suing out
of the writ of error in this cause, and that the same was
therefore barred by the statute of limitations. The
third additional plea averred that the writ of error
was issued and the record filed in this cause on April
7, 1914, and it averred the date of the several orders
and decrees as before stated on October 12, and 20,
1905, and February 19, 1906, the latter being the final
order, and that no other order or decree was thereafter
entered in said cause, and that plaintiffs in error did
not sue out this writ of error within eight years after
errors are alleged to have been committed, or within
eight years after any decree upon which error is so
assigned, nor within eight years after the final decree
in said cause. The fourth additional plea averred that
the alleged errors so assigned were committed by the
Circuit Court on different dates between October 11,
1905, and February 20, 1906, and that on April 7, 1914,
when this writ of error was sued out and the record
filed, plaintiffs in error were without right to have said
assignments of error heard and determined or to have
said decree reversed, because the statute of limitations
of this State had run and the time had passed within
which plaintiffs in error might sue out a writ of error
and assign the errors above enumerated.

The reason why it was deemed proper to permit
these different pleas to be filed arises from the follow-
ing considerations: Section 117 of the Practice Act
of 1907 (J. & A. ¶ 8654) fixes three years as the limit
for suing out a writ of error, except where the plaintiff
in error is an infant, *non compos mentis* or under

duress, when the same was entered, but the statute in force when the decree was rendered seems to be the one which applies, and the statute then in force was section 85 of the Practice Act of 1872, as amended in 1877, and the limitation to a writ of error was five years from the rendition of the decree or judgment complained of. Moreover, section 19 of the Chancery Act (J. & A. ¶ 899) provides that when any final decree is entered against any defendant, who has not been summoned or served with a copy of the bill or received the notice required to be sent him by mail, such defendant or his successors in interest may within one year after notice in writing given him of such decree or within three years after such decree, if no such notice has been given him, appear and be heard and permitted to answer. Under these provisions the decree in the case of one served by publication is not final and the statute of limitations does not begin to run until either one or three years after the entry of the decree, depending upon whether the plaintiff in error received the notice required to be sent him by mail. *Lyon v. Robbins,* 46 Ill. 276; *Sale v. Fike,* 54 Ill. 292; *Martin v. Gilmore,* 72 Ill. 193; *Wellington v. Heermans,* 110 Ill. 564; *Caswell v. Caswell,* 120 Ill. 377; *Burton v. Perry,* 146 Ill. 71. On the hearing in 1914 of the motion by plaintiffs in error in the Circuit Court to vacate the decree, there was evidence tending to show that Higgins did not receive the notice mailed him in 1905, and other evidence tending to show that he did receive it. We assume that the matters shown on that motion in 1914 are not entitled to be considered in determining whether, in passing upon the sufficiency of these pleas, the record shows that plaintiffs in error did or did not receive the notice required to be sent them by mail. We are not aware that those words in section 19 of the Chancery Act have received a construction by the Supreme Court. This record shows that notice was mailed to them in conformity with the statute. If that is treated

as prima facie proof that they received the notice, then the statute of limitations in this case would be five years after October 20, 1906, or six years after the entry of the decree in October 20, 1905, but there is no averment in the pleas that plaintiffs in error did receive the notice mailed them, and if the pleas are to be treated as admitting that they did not receive such notice, then the decree was not final under the above authorities for three years, and the statute gave them five years thereafter in which to sue out a writ of error, or eight years in all. If, as we hold, the decree of October 20, 1905, was the final decree, then the statute became a bar in any event after October 20, 1913. If the order of confirmation of February 19, 1906, is the final decree, then the writ of error was barred after February 19, 1914. In either case it was barred before this writ of error was sued out. We cannot concur in the position of plaintiff in error that if the plea asserts that the writ of error was not brought within a greater number of years than that prescribed by statute then the plea is bad, but concur in the view of that subject stated in *Adams Exp. Co. v. King*, 3 Ill. App. 316, on the principle that the less is included in the greater, and that a plea that a certain thing was not done within eight years before a certain date includes an allegation that it was not done within four or six years before that date. In their typewritten brief plaintiffs in error contend that this decree did not become final until after the statute of 1907 was in force and therefore the Three-Year Statute of Limitations is the only one which applies; but we are of opinion that under the authorities above cited, plaintiffs in error had eight years from the entry of the decree of October 20, 1905, in which to sue out a writ of error. The motion to withdraw the demurrer to the additional pleas, and to strike them from the files, and to reverse the decree is denied, and the demurrer is sustained to the first and second pleas and to the first and second

additional pleas, and is overruled as to the third and fourth additional pleas. Plaintiffs in error contend that if one plea is bad it confesses the errors assigned to which the plea is directed and the decree must be reversed. We hold, on the contrary, that one good defense defeats the action, and that if one plea is good the assignments of error to which such plea is directed are thereby defeated. In *Corwin v. Shoup, supra,* three pleas were filed to a writ of error, and a demurrer was sustained as to the first plea but overruled as to the second and third pleas, and thereupon the judgment was affirmed and the writ of error dismissed. The assignments of error to which these pleas were directed were all the assignments which questioned the original proceedings in 1905 and 1906, and the overruling of the demurrer to the third and fourth additional pleas to said assignments of error must result in an affirmance of these orders and decrees.

The errors assigned, to which no plea was filed, question the action of the court upon the motion by defendant in error to amend the service order and the action of the court upon the motion of plaintiffs in error to set aside the default and all orders and decrees in the cause, which motions were entered on January 31, 1914, and decided on February 19, 1914. The service order found that the affidavit of nonresidence on file showed that the defendants and each of them were residents of "Geneva Lake," Wisconsin, and that within ten days after the first publication of notice of the pendency of the suit the clerk of the court mailed a copy of said publication to each of said defendants, postage prepaid, properly addressed to said Frank M. Higgins and Cora Higgins at "Geneva Lake," Wisconsin. In fact the affidavit of nonresidence on file among the papers in said cause, and filed on the same day that the bill to foreclose was filed, stated that said defendants resided "in the city of Lake Geneva, in the County of Walworth and State of Wisconsin," and

that the post office address of each of them was "Lake Geneva, County of Walworth and State of Wisconsin," and the certificate of the publisher showed that the first publication of notice was on August 4, 1905, and the certificate of the clerk showed that on August 5, 1905, he sent by mail, postage prepaid, a copy of said notice to "Frank M. Higgins, Lake Geneva, County of Walworth, Wisconsin," and to "Cora Higgins, Lake Geneva, County of Walworth, Wisconsin." The sole object of the proposed amendment of the service order was to change the words "Geneva Lake" to "Lake Geneva." The jurisdiction of the court to amend at a later term in a matter of form is sustained in *Channel v. Merrifield,* 206 Ill. 278, and many other cases, and is authorized by statute. We doubt if the amendment was essential. There is no claim that in Walworth county, Wisconsin, there are two places and post offices, one named "Lake Geneva" and the other named "Geneva Lake." It is held in *Turner's Adm'r v. Patton,* 49 Ala. 406, that the courts will take judicial notice of the post roads and post offices of the United States. Where a court may take judicial notice the judges thereof may also resort to any available source of information where the personal knowledge of the judges needs such assistance. From such sources it seems to be the fact that there was in 1905 and still is in Walworth county, Wisconsin, a post office named "Lake Geneva," and that there was not then and is not now in that county or State a post office named "Geneva Lake," and further that under the practice prevailing in the post office department a letter duly stamped and mailed, addressed to a person at "Geneva Lake, Wisconsin," would be sent to "Lake Geneva, Wisconsin." But *Malaer v. Damron,* 31 Ill. App. 572, holds that the courts will not take judicial notice that a post office is established at a particular place. Even if we follow that rule, we do not think the mere transposition of the two words of a name should have the

effect here contended for.   Suppose a notice had been
duly mailed to a defendant addressed to him at New
York City, New York State.   Could it be supposed that
the proceedings would be in anyway invalidated if it
appeared that the legal name is "The City of New
York"?   We think not.   The affidavit and certificate
on file and therefore a part of the record, authorized
the amendment, and this, notwithstanding the order
was entered by a judge now deceased.   The order
amending the service order must therefore be affirmed.

In our opinion the motion by plaintiffs in error made
January 31, 1914, to set aside the default and all orders
and decrees in the cause, comes too late.   The decree
of October 20, 1905, was a final decree and established
the rights of the complainant against the defendants.
It was so held in *Ellis v. Leek,* 127 Ill. 60, where a like
decree was under consideration, and the cases are there
reviewed.   The order of February 19, 1906, repeated
some provisions of the decree of October 20, 1905, but
this was unnecessary.   As already shown, the statute
of limitations ran against a writ of error to question
that decree in eight years thereafter, under the most
favorable construction of the statutes governing that
question.   That eight years expired on October 20,
1913, and this motion was after that date.   If these
matters set up in the court below by defendants in
error could be heard on mere motion, still we would be
of opinion that the same limitation applies to an effort
to question the decree by motion as it would be by a
writ of error, or that by analogy to the statute of
limitations the right to have the court consider such
a motion is barred by laches.   On February 19, 1906,
the court did enter an order finding that defendants
had not paid the amount fixed by the decree within the
time given them therein in which to pay it.   Eight
years from that date had not expired when this motion
was interposed, and if defendants in error were seek-
ing to show that they paid said decree within said

ninety days, it may well be that they could question that last order by a proper bill in equity, but they offered no proof having any tendency to show that they have ever paid anything upon said decree. We therefore conclude that the statute of limitations or laches deprived the court of any authority to entertain or grant said motion, interposed in 1914, even if these matters could be raised by motion after the term. We are further of opinion that what is here sought to be done could not in any event be accomplished after the term by mere motion, but only by a writ of error or bill in equity. In *Ernst Tosetti Brewing Co. v. Koehler,* 200 Ill. 369, a decree was entered at the May term. At the October term the defendant moved to vacate said decree, and supported that motion by affidavits to the effect that the solicitor for complainant had by misrepresentation and fraud procured the court to enter said decree. The trial court vacated said decree, and afterwards entered a decree for defendant at a still later term. The Supreme Court held that the court erred in vacating the original decree at a later term; that after the term the decree could be corrected on motion in matters of form and as to clerical errors, but that the court was without power at that later term to set aside, vacate, modify or annul said decree. The court there said: "No error of law of any kind will justify revising or annulling a decree at a subsequent term in a summary way on a motion, but relief against it must be obtained by appeal or writ of error if the error is apparent on the face of the record, and if not, by bill of review or bill to impeach the decree for fraud or other sufficient cause." The court there further said: "A decree regularly entered cannot be altered or amended after the term has elapsed, except for the correction of matters of form or clerical errors,—and even such amendments cannot be made merely upon the evidence of solicitors contradicting what appears of record. These rules have been settled by repeated

decisions of this court. (*Cook v. Wood*, 24 Ill. 295; *State Savings Institution v. Nelson*, 49 id. 171). A decree cannot be vacated or amended at a subsequent term on motion or petition for the purpose of correcting an alleged error which involves the merits of the case. (5 Ency. of Pl. & Pr. 1049.) The proper method of impeaching and setting aside a decree after the term is to file an original bill in the nature of a bill of review when such decree may be set aside, reversed or modified, according to the equities of the parties.'' The same rules are announced in many other cases. We are of opinion that the matters relied upon in support of the motion were, except in one or two respects, beyond the reach of the court on mere motion after the term.

The foregoing conclusions dispose of this case and require the affirmance of the decree and orders assailed. But as it has been strenuously contended by counsel for plaintiffs in error in briefs and in oral argument and typewritten arguments that the decree is without a semblance of justification in law or fact and should shock the conscience of the court, and that if we approve these proceedings it will be the first time such a result has been reached in an Appellate tribunal in this State, and as a bill in the nature of a bill of review is now barred, we have concluded to discuss the case further.

It is contended that when this bill was filed nothing was due complainant and therefore the court had no jurisdiction to foreclose this mortgage. The note was dated May 5, 1904, was due on or before five years after date for $1,622.33, with interest at six per cent. per annum after date until paid. If the note stood alone there was nothing due upon it when the bill was filed; but the mortgage described the note as ''with interest at the rate of six per cent. payable annually,'' and it provided that if default be made in the payment of the note or any part thereof, ''or the interest thereon or

any part thereof at the time and in the manner specified for the payment thereof," then the whole of the principal and interest should become due at the option of the mortgagee, and the mortgage might immediately be foreclosed. Therefore the mortgage required the payment of interest annually, and it was not paid, and the filing of the bill was an election to declare the whole sum due, and the bill to foreclose was properly filed on July 29, 1905.

The affidavit of nonresidence was sworn to before H. M. Kelly, a notary public. Section 5 of chapter 99 of the Revised Statutes (J. & A. ¶ 7841) requires a notary public, before entering upon the duties of his office, to have a memorandum of his appointment and of the time when his office will expire entered in the office of the county clerk of his county. When this affidavit was sworn to, Kelly had been a notary public for a considerable time, but had not then caused such an entry to be made. It is contended that this invalidates the entire proceeding. The statute does not say that his acts shall be void if he fails to comply with the regulation. The public, executing papers before a notary public, are not required to investigate the records in the county clerk's office to find whether such an entry has been made, and it would be monstrous to hold that every act performed by or before a notary public who has failed to obey this statute is void, and thus invalidate legal proceedings and titles many years after the acts performed. Kelly was the solicitor for the complainant, and it is charged that therefore the affidavit is invalid and that the entire proceeding must fail. It is held in *Hollenbeck v. Detrick,* 162 Ill. 388, that while the practice of verifying papers in a cause before a notary who is an attorney therein is disapproved, yet it is not reversible error. The decree allowed an attorney's fee, pursuant to the mortgage, and it is contended that therefore Kelly, the attorney, was a party in interest, and for that reason the affi-

davit, sworn to before him, is invalid, and the decree, based upon said affidavit and publication thereunder, must be set aside, over eight years after it was entered. The decree did not direct defendants to pay Kelly any fee, but the entire sum found due, including the attorney's fee, was directed to be paid to the complainant, and the right of Kelly to a fee did not depend upon that provision of the mortgage or of the decree, but upon his contract with his client. We hold the attacks upon the affidavit not sustained by the law.

Sections 12 and 13 of the Chancery Act (J. & A. ¶¶ 892, 893) required the notice of the pendency of the suit in such county to be published "in some newspaper printed in his county" at least once in each week for four successive weeks. The certificate of the publisher, filed in this case, certified that the notice in question was published four successive weeks in the Weekly Fair Dealer, the first insertion being on August 4, 1905, and the last on August 25, 1905, and this certificate was dated at Ottawa, Illinois. The service order found "that publications were duly made in the Fair Dealer, a paper of general circulation, published in the City of Ottawa, the first of said publications being made on the 4th day of August, 1905," and "that the publication was made for four successive weeks in the said Fair Dealer, the first publication being made more than 40 days prior to the first day of the present term." The order does not state that this publication was in LaSalle county, but we take judicial notice that Ottawa is in LaSalle county. Neither the certificate nor the service order say that the Fair Dealer is a newspaper, but only that it is a paper of general circulation, published at Ottawa, and it is argued that it might be a mere circular. We hold that as it is called in the certificate the Weekly Fair Dealer and as the service order finds that it is a paper of general circulation, published in the city of Ottawa, the meaning of all this is that it is a newspaper. It is also contended that neither the

certificate nor the order show that it is "printed" in that county. We hold that the finding that it is published there is sufficient, and that if it were a fact that the paper was printed in Chicago and then sent to Ottawa and there published, as at least a part of newspapers having patent insides are printed, nevertheless its publication in Ottawa would satisfy the spirit of the requirements of the sections of the statute above referred to. It is worthy of note that section 1 of chapter 100 of the Revised Statutes, entitled "Notices" (J. &. A. ¶ 7853), uses the word "published" instead of "printed."

It is contended that the proofs reported by the master did not justify a decree of strict foreclosure. The rule is that where the premises are worth no more than the mortgage debt, and the debtor is insolvent and the creditor is willing to take the property in satisfaction of the debt and the costs, it is proper to decree a strict foreclosure. *Wilson v. Geisler,* 19 Ill. 49, and other cases. The proofs preserved in the report of the master contain the evidence of a number of witnesses giving their opinions of the values of the several tracts of real estate described in this mortgage. Plaintiffs in error contend that, by making a computation of the values of the several tracts as named by these witnesses and dividing the result by eleven, it will be found that the value of the one-eleventh interest covered by said mortgage was $334.53 more than the amount of this decree. This computation is not set out in the briefs and we have not verified it, but assume it to be true. In arguing that this shows that strict foreclosure should not have been awarded, several things are overlooked. The witnesses stated the value per acre of the entire tracts. It is obvious that a fraction thereof is worth less than the acre value of the entire property, for he who buys such a fraction subjects himself to his share of the expenses of a partition and will be compelled to accept any reasonable price bid, even if he

thinks it too small. Again, complainant testified before the master that the land mortgaged to him was worth no more than the indebtedness and the costs. Again, on the hearing of the motion made by plaintiffs in error, they showed that this land was subject to a life estate in the mother of Frank M. Higgins, and that she died December 12, 1913. It was also proved before the master that Higgins, the maker of the note, was insolvent. It is said that the $100 solicitor's fee should not have been included in the decree because not asked in the bill. The mortgage provided that immediately upon filing a bill to foreclose it, $100 solicitor's fee should become due to the complainant, and a copy thereof was filed with the bill as an exhibit and expressly made a part of the bill. The bill thus showed that a solicitor's fee of $100 was due, and it prayed for a decree for what was due. We conclude the proofs warranted a decree of strict foreclosure.

In support of the motion plaintiff in error filed the affidavit of Frank M. Higgins. He therein stated that he never received notice in any way of the pendency of this suit and did not know that any proceedings had ever been had to foreclose said mortgage until December, 1913. He then stated for what matters the note was given, implying that the note was given for more than was due. His affidavit gives the dates and amounts of the several judgments which entered into this note, and the principal thereof amounts to $87.53 less than the note. We have computed the interest on said judgments to the date of the note, and find that the note exceeds the principal and interest by less than $24, and the affidavit does not state what the costs were in the several cases where said several judgments were recovered, so that it is obvious that the note was intended to be for the exact amount which Higgins owed on said judgments. The affidavit then sets up an entirely different agreement as to when and how this money should be paid, which agreement is said to have been made at the time when the note

and mortgage were executed. All oral and prior contemporaneous arrangements are merged in the papers which the parties execute, and certainly Higgins cannot be heard now to show differently. The affidavit states that affiant's mother had a life estate in these premises, and agreed with him to pay the interest on this note, and that she did pay the interest thereon from year to year until she died, in December, 1913. He does not state that he was present and saw any interest paid, and he does not produce the affidavit of any other person who saw any interest paid, and his affidavit can only mean that he has been informed or believes that the interest was paid from year to year. In addition to all the reasons hereinbefore set out why such a claim cannot be received on mere motion more than eight years after the decree, the good faith and truth of this affidavit are much shaken by correspondence which defendant in error introduced in rebuttal to said affidavit. At the hearing of said motion Kelly, solicitor for defendant in error, had been called and examined as a witness for plaintiffs in error, and he thereupon further testified in behalf of defendant in error, producing copies which he testified to be true copies of letters written by him, which he testified he mailed, addressed to Frank M. Higgins at Geneva Lake, Wisconsin, and letters in reply thereto, which he testified he received from Higgins. These letters indicate that Kelly was a friend of Higgins and anxious to have him avoid the foreclosure. The correspondence began more than five months before this bill was filed, and Kelly therein repeatedly urged Higgins to pay the annual interest when due and informed him that McCormick would foreclose if he did not, and some time after the note was due wrote him that he had induced McCormick to wait fifteen days longer. Higgins' replies show that though these letters were addressed to "Geneva Lake" instead of "Lake Geneva," yet Higgins received them. Under

date of May 3, 1905, two days before the annual interest was due by the terms of the mortgage, Higgins wrote to Kelly: "I thought I could send a draft to-day for amt. of int. so delayed my reply to your letter. You will receive one next Monday. or Tuesday at the latest." The printed letter heads upon which Higgins wrote these letters, and some of the letters themselves, show that he had an established business at Lake Geneva as the publisher of a newspaper there. Under date of August 6, 1905, the next day after the clerk mailed him the notice, Higgins wrote to Kelly: "I found that it was impossible for me to raise the interest money on that mortgage and as no one is losing anything but myself, I expect it is all right. Your client will find ample funds to reimburse him, and you, no doubt, will get your fee." After the decree was entered Kelly wrote Higgins telling him the amount of the decree and the time within which he could pay it, and urged him very strongly to make payment and save his land, if he thought it worth more than the decree. In a letter which Higgins wrote to Kelly on August 14, 1906, nearly six months after the final order, he said among other things: "As to my keeping up the interest and preventing the foreclosure, it was simply impossible, so I will have to make the best of the situation as it is." With these letters in the record it is idle to say that he had no notice and has not been guilty of laches. But plaintiffs in error argue that it is not proven that Higgins wrote these letters and therefore the court should not have permitted them to be received subject to objection. Kelly did not testify in express words that the words "F. M. Higgins" signed to them were the genuine signature of Frank M. Higgins. But the letters written by Kelly show that he was well acquainted with Higgins, and he testified that he received these letters from Frank M. Higgins, and they contain such reference to the con-

tents of the letters which Kelly wrote and mailed to Frank M. Higgins as to make it obvious that they are genuine letters of said plaintiff in error. Frank M. Higgins did not take the stand to deny that he wrote them.

We are satisfied that there is no reversible error in the decree and orders assailed by this writ of error. The decree and orders are therefore affirmed.

*Affirmed.*