James D. Connell, Appellee, v. North Town Motor Company, Appellant.

Gen. No. 39,980.

248

Heard in the second division of this court for the first district at the February term, 1938. Opinion filed November 17, 1938.

FREEMAN & FREEMAN, of Chicago, for appellant.

LEONARD J. MANDEL, of Chicago, for appellee; HENRY M. SELIGMAN, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

This appeal arises out of a judgment for $200 rendered in the municipal court of Chicago on October 13, 1937, on a trial by the court without a jury.

Appellee (plaintiff) filed a motion, supported by an affidavit and suggestions, that the appeal be dismissed, and we reserved decision. Notice of appeal was filed in the court below on November 2, 1937, and under the practice prevailing at that time the last day for filing the record in this court was Saturday, January 1, 1938, which was a holiday known as New Year's day. The record was not filed until Monday, January 3, 1938, being the sixty-second day after notice of appeal was filed. No extension of time was requested or granted. On December 31, 1937, the following order was entered here:

"On the Court's own motion, it is ordered that this Court stand adjourned until Monday, January 3rd, A. D., 1938, at ten o'clock, A. M., and that the Clerk's office remain closed until Monday, January 3rd, A. D., 1938, in observance of New Year's Day." Plaintiff

cites subparagraph (a) of paragraph (2) of Rule 36 of the Supreme Court, reading:

"Whether the praecipes do or do not specify any proceedings at the trial, the record on appeal shall be transmitted to the reviewing court not more than sixty days after notice of appeal has been filed. . . ." The following portion of paragraph (2) of the rule is also pertinent: "(b) . . . Where the report of the proceedings at the trial or an agreed statement of facts is filed in the trial court within proper time but the record is not transmitted to the reviewing court before the expiration of the time fixed in this rule, the trial court or the reviewing court on application of the appellee and upon proper showing, may dismiss the appeal; but where the record shall have been filed in the reviewing court after the expiration of the time fixed by this rule but before such application is made by the appellee, the reviewing court shall dismiss the appeal."

In considering this matter we should bear in mind paragraph (2), sec. 200, ch. 110, Ill. Rev. Stat. 1937, (sec. 76, Civ. Prac. Act) [Jones Ill. Stats. Ann. 104.076], that

"An appeal shall be deemed perfected when the notice of appeal shall be filed in the lower court. After being duly perfected no appeal shall be dismissed without notice, and no step other than that by which the appeal is perfected shall be deemed jurisdictional." Section 6, ch. 100, Ill. Rev. Stat. 1937 (sec. 6, Notices Act) [Jones Ill. Stats. Ann. 107.292], provides:

"In computing the time for which any notice is to be given, whether required by law, order of court or contract, the first day shall be excluded and the last included, unless the last is Sunday, and then it also shall be excluded." Appellee maintains, under the authority of *Richter v. Chicago & Erie R. Co.*, 273 Ill. 625, that where the last day for filing a record is a holiday such day will not be excluded from the com-

putation of time unless it falls on a Sunday, and we accept that as a correct statement of the law. In the instant appeal the last day fell on a Saturday and the statute last quoted did not apply. Section 18, ch. 98, Ill. Rev. Stat. 1937 (sec. 17, Negotiable Instruments Act) [Jones Ill. Stats. Ann. 89.018], designates the days that are declared to be legal holidays and half holidays, and states that

". . . For all purposes whatsoever, as regards the presenting for payment or acceptance, the maturity and protesting and giving notice of the dishonor of bills of exchange, bank checks and promissory notes and other negotiable or commercial paper or instruments, be treated and is considered as is the first day of the week, commonly called Sunday. When any such holidays fall on Sunday, the Monday next following shall be held and considered such holiday. All notes, bills, drafts, checks, or other evidence of indebtedness, falling due or maturing on either of said days, shall be deemed as due or maturing upon the day following, and when two (2) or more of these days come together, or immediately succeeding each other, then such instruments, paper or indebtedness shall be deemed as due or having matured on the day following the last of such days." A separate statute, approved June 24, 1921, adds November 11, Armistice day, to the list of holidays. Section 216 of the same chapter (sec. 193, Negotiable Instruments Act) [Jones Ill. Stats. Ann. 89.216] reads:

"Where the day, or the last day, for doing an act herein required or permitted to be done falls on Sunday or on a holiday, the act may be done on the next succeeding secular or business day." The language quoted from the Negotiable Instruments Act has no application to the filing of records or pleadings in court. Appellant (defendant), in its counter suggestions, argues that the motion to dismiss comes too late, having been made after appellee's brief and argu-

ment was filed. Appellant's brief and argument and abstract were filed on February 14, 1938. March 11, 1938, appellee filed a supplemental abstract, and on March 24, 1938, appellee filed his brief and argument. The motion to dismiss which we are discussing was filed on April 15, 1938, about three weeks after he had filed his brief. We held in *Finlen v. Foster,* 211 Ill. App. 609, 621: "In actual practice the filing of appellees' brief is held to be equivalent to a joinder in error. *Truesdale v. Ford,* 40 Ill. 80; *DeBeukelaer v. People,* 25 Ill. App. 460; *Ferrias v. People,* 71 Ill. App. 559; *Fread v. Hoag,* 132 Ill. App. 233; *McCormick v. Higgins,* 190 Ill. App. 241; *Tobias v. Tobias,* 193 Ill. App. 95.

"By joining in error appellees waived the right to move to dismiss the appeal. *Matson v. Connelly,* 24 Ill. 143; *Brockway v. Rowley,* 66 Ill. 99; *Dinet v. People,* 73 Ill. 183; *Kanc v. People,* 13 Ill. App. 382; *Fread v. Hoag, supra; Kircher v. M. Keating & Sons Co.,* 145 Ill. App. 1; *People v. Rudorf,* 149 Ill. App. 215."

On March 1, 1938, on the call of the February term calendar, the appeal was "Taken on abstract and briefs filed by appellant and briefs of appellee due March 14/38." Having in mind the fact that on March 1, 1938 (prior to the time the motion to dismiss was presented), the appeal had been taken, it is interesting to observe that our Supreme Court, in *Farrell v. West Chicago Park Commissioners,* 182 Ill. 250, 252, said: "When the motion [to dismiss the appeal] was made the appellants had submitted their controversy to the court, and it could not be entertained without setting aside the order by which the case was taken. There was no motion to set aside that order, and the motion to dismiss must be denied." Had appellee desired to move to dismiss the appeal on the ground that the record was filed two days late, he should have done so before he filed his brief and argument and before the case was taken by the court. Appellee's brief

and argument calls our attention to parts of the record and abstract, and we must assume that at the time he filed the brief he knew that the record had been filed two days beyond the time permitted. Under such circumstances it must be assumed that he elected to ignore the delay in filing the record. For the reasons stated the motion to dismiss the appeal is denied.

Having disposed of the motion to dismiss, we shall now consider the points presented in the respective briefs:

Plaintiff, a real estate broker, claimed a commission for procuring for defendant a leasehold on a one-story garage building located at the southeast corner of Devon and Leavitt streets, in the city of Chicago, and asserted that the commission he earned amounted to $369. Harry Kantoff was called as a witness for plaintiff under section 33 of the Municipal Court Act, and testified that in 1935 he was president of defendant corporation; that he had business dealings with plaintiff in connection with the lease for the southeast corner of Devon and Leavitt streets; that on November 7, 1935, witness brought to plaintiff a letter, reading as follows:

"November 7, 1935

"James D. Connell & Co.
"736 Sheridan Road
"Chicago, Ill.
"Gentlemen:

"In accordance with our telephone conversation, we submit the following offer for building at Devon and Leavitt Streets:

"We shall accept this building on or about December 1st at a rental for the first year at $325.00 and for each of the following two years at $350.00.

"Very truly yours
"North Town Motors Company
"HK:L            (Signed) Harry Kantoff";

that he had a conversation with plaintiff at the time; that plaintiff told him that the property was in foreclosure and that negotiations would have to be made through the bondholders' committee; that Mr. Slavin, then the secretary of defendant corporation, was present at several conversations concerning the lease; that the first conversation took place sometime in the middle of the summer of 1935; that the first conversation at which plaintiff, Slavin and witness were present, took place sometime in September, 1935; that plaintiff was authorized by witness to negotiate with the bondholders' committee; that on December 11, 1935, plaintiff told witness that "he could secure the lease if we would bring in a deposit"; that witness told plaintiff that he was no longer interested. Plaintiff testified that he was a licensed real estate broker; that the letter was brought to his office by Mr. Kantoff; that on November 7 Messrs. Kantoff and Slavin asked him to procure them a building; that he explained to them that he could get the building at Leavitt and Devon; that they were much interested; that he told them he could get it at a rental of $325 for the first year and $350 for the next two years and that he would have to go to court on a petition to get authority of the court to make a lease on account of the building being in receivership; that on November 8 Slavin and Kantoff told him that "they would take the lease if it commenced on or about the 1st of December, to get it just as soon as we could possibly get it, as they wanted the building"; that on December 11 witness was in court; that on December 12 he reported to Kantoff and Slavin that the case was continued; that he told them "they wanted a deposit, that the Judge wanted a certified check. He continued the case from whatever that date was, the 11th or the 12th, to the 16th, and wanted a certified check from the North Town Motors"; that witness told them that the lease

would be ready for them as soon as they gave the deposit, and to be in court on the 16th; that Kantoff and Slavin told him at that time that they were not interested; that the customary and reasonable charge for such services would be $369. On cross-examination the witness testified that he did not submit a lease; that as far as he knows the court never authorized a lease; that someone else got the building. Mr. Kantoff, recalled by defendant, testified that at the time he delivered the letter to plaintiff he said, "Here's a letter. We will accept the property not later than December 1, 1935, because we must renew our lease at the old premises"; that at that time nothing was said about wanting a deposit; that plaintiff did not at any time submit a lease for the premises; that witness did not tell plaintiff that he would pay the first month's and the last month's rent. Plaintiff, being recalled, testified as follows: "Q. Was there anything said about a deposit of money at that time? A. No, none whatsoever. Q. When did that question come up for the deposit of the rentals? A. When I asked him for the deposit? Q. Yes. A. After the first hearing come up in court, December 11th. Q. Did you talk to them before? A. I talked to them but never asked them about money. Q. What did you say to Mr. Kantoff about the deposit of rentals that will be necessary to be made? A. On the 11th of December? Prior to that time, when we first entered into negotiations, I told Mr. Kantoff that when you enter into a long lease, a two or three or five year lease, it is usually customary to put up, if you don't possess credit rating, two or three months in advance to guarantee the rent to the owners. He told me that was perfectly all right, but he possessed credit rating, and he started to tell me all about his business. On December 9th, I talked with Mr. Kantoff relative to information we needed for the petition, and was told to go ahead. Q. Did

he say to you then that he needs the premises on December 1st? A. He just told me to go right ahead.'' On cross-examination witness testified: ''Q. When was the first time you told them you needed two months' rent on this particular building? A. On this particular building? Either the 11th or the 12th. I think it was the 11th. Q. The 11th or 12th of December? A. Yes. Q. Before that you didn't say anything about a deposit on this particular building? A. Yes. Not on this particular building, but I did tell him they would have to make a deposit if he couldn't qualify.''

The question arises as to whether plaintiff procured a lessor who was ready, willing and able to lease on the terms and conditions stated. No lease was ever entered into. A bondholders' committee sought permission from the superior court to have the receiver enter into a three-year lease providing that defendant pay $325 a month during the first year and $350 a month for the two succeeding years. It is evident that the court declined to enter the order prayed for and suggested that defendant make a deposit of the first month's rent and the last month's rent. From a careful reading of the testimony of plaintiff it will be observed that he states that the first time that the requirement for two months' deposit of rent was mentioned was either on the 11th or the 12th of December. He had mentioned generally that in securing leases on buildings a deposit is required to be made. The letter of November 7 undoubtedly states the terms of the agreement and no mention is made therein of a deposit of two months' rent. It is significant that while the petition filed in the superior court sets out the offer to lease the premises, it does not mention a deposit. The proposal presented to defendant corporation after the matter was in court was a different proposal from the one defendant had theretofore accepted in that there was a requirement of a deposit

of two months' rent. It is undisputed that the proposal to enter into a lease on the altered conditions was rejected by defendant. Hence, plaintiff did not procure a lessor who was ready, able and willing to enter into a lease on the terms and conditions stated. The proposed lessor, on a modification suggested by the chancellor, was willing to enter into a lease on terms and conditions different from those stated. The point is also made that under the original proposition defendant corporation was to be given possession on or about December 1, and that the lease finally proposed would not give possession until long after that time. We shall not extend this opinion by a discussion of that phase of the case, as what has been said is controlling.

Taking as true the evidence in favor of plaintiff's claim in its most favorable aspect to plaintiff, we find that it is clearly insufficient to support the judgment. No good purpose can be served by remanding the cause for a new trial. Therefore the judgment of the municipal court of Chicago is reversed and judgment is entered here against plaintiff for costs.

*Judgment reversed and judgment here against plaintiff for costs.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.