LARRY D. SHIPLEY, Plaintiff-Appellant, v. STEPHENSON COUNTY ELECTORAL BOARD, Defendant-Appellee.

Second District No. 84—164

Opinion filed February 11, 1985.—Modified on denial of rehearing March 15, 1985.

Larry D. Shipley, *pro se*, Robert K. Slattery, and Randall J. Manus, all of Freeport, for appellant.

Charles R. Hartman, State's Attorney, of Mt. Carroll (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff Shipley is the proponent of two petitions for referendum filed on December 15 and 16, 1983, in Stephenson County pursuant to section 2 of "An Act authorizing certain counties to levy an additional tax ***" (Ill. Rev. Stat. 1983, ch. 34, par. 2155). The petitions requested a referendum on an action of the Stephenson County Board, which authorized a .04% levy on the property owners of that county. Subsequently, it was discovered that the petitions had been notarized by persons who no longer had authority to notarize them under the Illinois Notary Public Act (Ill. Rev. Stat. 1983, ch. 99, par. 10). Objections to the petitions were filed on this basis, and the petitions were subsequently ruled invalid by the Stephenson

County Electoral Board (hereinafter referred to as Electoral Board or Board). Plaintiff appealed to the circuit court of Stephenson County, which affirmed the Board's decision. In this appeal, we are asked to review the decisions of the Board and the circuit court to determine, primarily, whether the two petitions for referendum are invalid because the individuals who notarized them were without authority to do so under the Illinois Notary Public Act. Because we have concluded that the cause should be reversed on the basis of this issue, we will consider only two of the remaining issues raised by plaintiff in this appeal: whether the Electoral Board lacked jurisdiction over the hearing on the objections to the petitions, and whether plaintiff was unlawfully charged a filing fee in connection with the filing of his complaint for review in the Stephenson County circuit court.

■ Plaintiff's jurisdictional argument is based upon his claim that the Electoral Board failed to give him the notice required under section 10—8 of the Election Code. (Ill. Rev. Stat. 1983, ch. 46, par. 10—8.) That section requires that a copy of the objection be transmitted "by registered mail or receipted personal delivery ***  to the person designated on a certificate attached to the petition as the principal proponent of the public question, or as the proponents' attorney, for the purpose of receiving notice of objections." (Ill. Rev. Stat. 1983, ch. 46, par. 10—8.) Section 10—8 further provides that this notice is to be served upon the principal proponent "not later than 12:00 noon on the next business day" following the filing of the objections. (Ill. Rev. Stat. 1983, ch. 46, par. 10—8.) Plaintiff argues that the statutory and procedural requirements placed upon the Electoral Board officials by section 10—8 are mandatory as to them, but are only directory as to the people and the plaintiff. Plaintiff further argues that he was deprived of procedural due process because the notice which he received was defective, and because he was denied the time needed for preparation for the hearing on the objections. We disagree with plaintiff's contentions in this regard, and find that the notice given by the Electoral Board and received by plaintiff Shipley was sufficient to confer jurisdiction.

A mandatory provision in a statute is one which the omission to follow renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 564-65, 429 N.E.2d 1292, quoting *People ex rel. Agnew v. Graham* (1915), 267 Ill. 426, 436, 108 N.E. 699.) When a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or di-

rectory depends upon its purpose. (*People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272, 277, 410 N.E.2d 404.) If the provision merely directs a manner of conduct for the guidance of the officials or is designed to secure order, system and dispatch in proceedings, it is generally directory, absent negative language denying the performance if the acts required are not done in the manner designated. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act in the manner specified, the statute is mandatory. 88 Ill. App. 3d 272, 275, 277, 410 N.E.2d 404.

■ After reviewing the provision in question, we conclude that while some notice to interested parties is mandatory under the statute, the manner and method of service prescribed therein is merely directory. Initially, we note that the Board found that no person was certified as the proponent of the referendum. This finding is not denied by plaintiff Shipley. Thus, it is clear that strict compliance with the notice provision of section 10—8 of the Election Code was in all likelihood not possible. Further, the failure to strictly comply with that provision was not the fault of the Board but rather that of the plaintiff, who ostensibly drafted the referendum petitions and should have designated himself as the proponent.

In any event, however, we believe the facts of this case closely resemble those in *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292, wherein the court considered the question whether the Electoral Board lacked jurisdiction because the chairman failed to have notice of the hearing served upon the candidates by the sheriff, as required by section 10—10 of the Election Code. (Ill. Rev. Stat. 1983, ch. 46, par. 10—10.) The candidates in that case had in fact been served by registered or certified mail; however, section 10—10 required that the chairman "shall" institute both forms of notice. (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 564, 429 N.E.2d 1292.) Under these circumstances, the court stated that the intent of the legislature in providing for two methods of serving notice was to increase the likelihood that candidates would actually receive notice of the hearing. (102 Ill. App. 3d 558, 565, 429 N.E.2d 1292.) The candidate in question in fact received the notice that was sent by mail and participated in the hearing through his attorney. The court also noted that to accept the candidate's argument would be to give the chairman "absolute veto power" over objections since, by ignoring one of the alternative methods of serving notice, he could prevent the Board from having authority to sustain valid objections. (102 Ill. App. 3d 558, 565, 429 N.E.2d 1292.) Noting that section 10—10 does not explicitly specify that this is the intended

result of a failure to send notice by both methods, the court concluded that noncompliance with the redundant requirement of sheriff's service was not fatal to the Board's jurisdiction. 102 Ill. App. 3d 558, 565, 429 N.E.2d 1292.

The provision in question here requires that notice be sent either by registered mail or receipted personal delivery. (Ill. Rev. Stat. 1983, ch. 46, par. 10—8.) In so requiring, it is clear that the legislature intended, as in *Havens*, to increase the likelihood that interested parties would actually receive notice of the hearing. (See *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 565, 429 N.E.2d 1292.) Plaintiff here did in fact receive notice of the objection the day after it was filed and participated in the hearing on the objections. Further, the Board's opinion reflects that continuances were granted as needed for the preparation of their case. Plaintiff has not claimed that he was denied a continuance, or even that he requested one; thus, his claim of prejudice is without merit. Also, to accept plaintiff's view of the notice provision would give the chairman, who is responsible for such notice, "absolute veto power" over objections simply by serving notice in a manner different from that set forth in the statute. (See *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 565, 429 N.E.2d 1292.) Finally, the language of section 10—8 does not specifically state that the failure to strictly comply with the notice provision results in a nullification of the Board's authority. Accordingly, we conclude that the notice provision of section 10—8 is directory in nature and was substantially complied with, and that the Board therefore had jurisdiction over the hearing below.

■ Next we consider the primary issue in this appeal, that is, whether the Electoral Board and the circuit court erred in finding the petitions invalid because several of the notaries were without authority to notarize the petitions under the Illinois Notary Public Act (Ill. Rev. Stat. 1983, ch. 99, par. 10), hereinafter referred to as the "Act."

Section 28—3 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 28—3) sets forth the requirements for filing a petition for referendum and provides, in relevant part, that the circulators of such petition shall add a statement at the bottom of each sheet of the petition certifying that the signatures on that sheet were signed in his presence and are genuine, and that to the best of the circulator's knowledge the persons signing the petition are registered voters and the addresses stated on the petition are correct. Section 28—3 further provides that "[s]uch statement shall be sworn to before some officer authorized to administer oaths in this State." (Ill. Rev. Stat. 1983, ch. 46, par. 28—3.) The authority of a notary is set forth

in section 10 of the Illinois Notary Public Act and states:

"A notary public duly qualified shall have authority, *while he resides in the same county in which he was appointed*, to execute the duties of his office throughout the state." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 99, par. 10.)

Thus, under the plain language of this provision, a notary has authority to administer oaths in this State only as long as he or she continues to reside in the same county in which he or she were appointed.

At the hearing in the instant case, the Electoral Board found that the majority of the pages of the petitions in question were notarized by James L. or Diane Dawson. Up until March 1983, the Dawsons were residents of Winnebago County, and they received their notary commissions from the Secretary of State in that county. Winnebago County was also inscribed upon their notarial seals. In March 1983, the Dawsons changed their place of residence in Stephenson County and thus lost their authority to administer oaths as of that date, since they no longer resided in the same county to which they were appointed. (Ill. Rev. Stat. 1983, ch. 99, par. 10.) Plaintiff argues, however, that even if the Dawsons were without "de jure" authority to administer the oath on the petitions, they were nevertheless "de facto" officers with "de facto" authority to administer the oaths. The Electoral Board, on the other hand, argues that section 10 of the Illinois Notary Public Act is mandatory and thus that the "de facto" officer doctrine does not apply in the instant case. We agree with the plaintiff's position, and accordingly reverse the decisions of the Electoral Board and the circuit court on this basis.

Initially, the language of section 10 does not prescribe conduct which must be followed by the notary, but is merely a statement regarding the scope of a notary's authority to administer oaths. However, even if we construe section 10 as being mandatory as to the Dawsons, we believe this fact would not bar the application of the "de facto" officer doctrine as it would apply to third persons in this case. In *McCormick v. Higgins* (1914), 190 Ill. App. 241, the court was asked to determine whether a notary's failure to enter a memorandum of his appointment in the office of the county clerk invalidated the affidavit notarized by him. The court concluded that this failure did not render the affidavit invalid, stating:

"The statute does not say that [the notary's] acts shall be void if he fails to comply with the regulation. The public, executing papers before a notary public, are not required to investigate the records in the county clerk's office to find

whether such an entry has been made, and it would be monstrous to hold that every act performed by or before a notary public who has failed to obey this statute is void, and thus invalidate legal proceedings and titles many years after the acts performed." (190 Ill. App. 241, 260.)

Similarly, in *People v. Severinghaus* (1924), 313 Ill. 456, 469, the court rejected a contention by the State that a defendant's answer could not be considered as being made "under oath" because of the fact that the notary had failed to strictly comply with the law. The court stated:

"A person acting as a notary under color of authority, with public acquiescence, will be held to be a notary *de facto*, and as to the public and third persons his acts are valid and cannot be attacked collaterally. It does not matter whether disqualification or complaint against his act is that he is ineligible *for any reason*, or because of the fact that he is a hold-over, or has failed to take the oath of office or otherwise comply with the directory provisions of the statute." (Emphasis added.) 313 Ill. 456, 469.

While the provisions in the *Severinghaus* and *McCormick* cases were considered to be directory in nature, we believe the reasoning of those cases is equally applicable here. To adopt the Board's position would be to require the public to investigate the underlying authority of notary publics whenever papers are executed before them. Such a result would require the public to determine not only the requirements of the Illinois Notary Public Act, but also whether those requirements have been met by the notary before whom they appear. We also note that the Illinois Notary Public Act contains no statement rendering void any acts performed by or before a notary public who has moved from the county in which he was appointed. Further, we do not believe the legislature intended such a result, at least in the absence of any evidence of fraud or corruption in the oath-taking process.

This view is bolstered by the underlying purpose of the oath requirement in section 28—3 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 28—3). It is well established that the requirement that a circulator appear before an appropriate official to swear to his oath is a mandatory one under section 28—3. (*Bowe v. Chicago Electoral Board* (1980), 79 Ill. 2d 469, 470, 404 N.E.2d 180; *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 536, 341 N.E.2d 394.) It is assumed that by his sworn statement the circulator is subjecting himself to possible perjury prosecutions; thus, this requirement is considered a meaningful and realistic method of eliminating fraudulent signatures

and protecting the integrity of the political process. (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 536, 341 N.E.2d 394.) In the instant case, the circulators did in fact take an oath before a person who they believed was authorized to administer oaths, supplying all the information required of them by the statute. Thus, it is clear that the circulators believed they could be subjected to perjury prosecutions if the statements they made proved to be false. Further, the Board in the instant case specifically stated that there was no evidence of fraud or corruption on the part of either the Dawsons or the circulators; nor was there any evidence that any of these parties knew of the violation of section 10 of the Act. Under these circumstances, we conclude that the integrity of the political process was not in jeopardy, and that the oath provision of section 28—3 of the Election Code was substantially, if not literally, complied with by the circulators of the petitions.

■■ Finally, we consider plaintiff's argument that he was unlawfully charged a filing fee in connection with the filing of his complaint for review in the circuit court. Plaintiff's argument is premised upon the assumption that the filing fee for a complaint for administrative review is not covered by section 27.1 of "An Act to revise the law in relation to clerks of court" (Ill. Rev. Stat. 1983, ch. 25, par. 27.1), which governs fees of the clerk of the circuit court. Thus, he argues that pursuant to paragraph (v) of that statute, any fee charged was required to be set by a rule or administrative order of the circuit court, which plaintiff claims was not done in this case. (Ill. Rev. Stat. 1983, ch. 25, par. 27.1(v).) However, section 27.1(a)(1) provides for a fee in "[a]ll civil cases except as hereinafter otherwise provided," and thus this provision authorizes fees in the instant case. Further, the court here did in fact order that plaintiff be assessed the costs of the proceedings. Accordingly, we conclude that the filing fee was properly charged to the plaintiff in this case.

For the reasons here stated, the judgment of the circuit court of Stephenson County is reversed and the cause remanded for the Stephenson County Clerk to submit the proposition at an election in accordance with the general election law.

Reversed and remanded.

STROUSE and SCHNAKE, JJ., concur.