FRANK JOHNSON *et al.*, Plaintiffs-Appellees, v. JANE THEIS, Defendant-Appellant.

Second District    No. 2—95—1351

Opinion filed February 28, 1996.—Rehearing denied March 28, 1996.

John E. Regan, of Early, Collison, Tousey, Regan, Woldek & Morrow, of Elgin, for appellant.

Frank D. Johnson, of Dundee, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

Plaintiff Frank Johnson, designated as the principal proponent of a referendum question regarding the issuance of sewerage revenue bonds in the Village of East Dundee, Illinois (the Village), as well as the nine remaining plaintiffs, all circulators of petitions in support of the referendum, filed this *mandamus* action seeking to direct the defendant, Jane Theis, as Village clerk, to certify the referendum question for placement on the ballot for the November 7, 1995, election. Following the decision of the East Dundee Municipal Officers Electoral Board (the Electoral Board) to sustain objections to the plaintiffs' petitions, the plaintiffs amended their complaint to include allegations relating to the Electoral Board's recent action.

The court below rejected the *mandamus* claim, electing instead to treat the complaint as a request for judicial review of the Electoral Board's decision pursuant to section 10—10.1 of the Election Code (the Code) (10 ILCS 5/10—10.1 (West 1994)). Although the trial court found the Electoral Board's decision regarding the alleged defects in the plaintiffs' petitions to be correct "if properly objected to," it nonetheless held the Electoral Board's action to be invalid due to its failure to comply with the notice requirements of section 10—10 of the Code (10 ILCS 5/10—10 (West 1994)). Accordingly, the court ordered that the referendum question be certified and placed on the March 1996 ballot. The court subsequently stayed its order pending appeal.

On appeal, the defendant argues that the defects in the notice given by the Electoral Board did not deprive it of jurisdiction over the objections to the petitions and that the trial court erred in reversing the Electoral Board's decision. We find, however, that the plaintiffs' failure to comply with the requirements of section 10—10.1 of the Code in seeking judicial review of the Electoral Board's decision left the trial court without jurisdiction to consider the Electoral Board's decision on the merits. Our review, therefore, is limited to whether the trial court's rejection of the plaintiffs' claim for *mandamus* was correct. Because we agree with the defendant that the Electoral Board's failure to strictly comply with the Code's notice requirements did not deprive it of jurisdiction to consider the objections to the plaintiffs' petitions, we conclude that the trial court's denial of the plaintiffs' claim for *mandamus* was proper.

The facts of the case are as follows. On July 24, 1995, the East Dundee Village Board passed an ordinance authorizing the issuance of sewerage revenue bonds in the amount of $5,900,000. At that meeting, one of the trustees stated that citizens could petition for a referendum on the issuance of the bonds. The Village subsequently made petitions for this purpose available at the Village Hall.

Nine people, all plaintiffs herein, circulated the petitions. On September 1, 1995, the defendant received 21 petitions containing 192 signatures. No principal proponent was designated. Thereafter, on September 11, 1995, the defendant received an "Objectors Petition" from Fernando Pannepucci. The defendant then forwarded a copy of Pannepucci's petition to Jill Yucuis, Village president and chairman of the Electoral Board. The Electoral Board scheduled a meeting, pursuant to section 10—10 of the Code (10 ILCS 5/10—10 (West 1994)), to consider the objections.

On September 13, 1995, pursuant to an administrative order entered by the chief judge of the sixteenth judicial circuit, the Village Hall was designated as a place of holding court for purposes of the hearings of the Electoral Board, as required by section 10—10 of the Code (10 ILCS 5/10—10 (West 1994)). Also on that date, the nine circulators were served with copies of the objector's petition and a notice of the Electoral Board hearing to be held on September 18, 1995. Although the notice provided the date and time of the Electoral Board hearing, it failed to designate a location for the hearing.

Plaintiff Johnson testified that he first saw a copy of the Electoral Board's notice when his niece, plaintiff Nancy Smith, showed it to him. At that time, Johnson was not formally involved with the petition drive. A day or two before the September 18 meeting, however, he agreed to become the principal proponent of the measure.

On September 18, 1995, Johnson appeared at the hearing and tendered his certificate of principal proponent and filed an objection to the hearing based on defective notice. He had learned of the location of the meeting by contacting the office of the chief judge and had relayed the information to three of the circulators, plaintiffs Paul Michalski, Raymond O'Connor, and John Van Acker. The Electoral Board continued the hearing in order to consider Johnson's objection.

On September 26, 1995, the Electoral Board rejected Johnson's objection. The Electoral Board's order held as follows: (1) that the notice provisions of section 10—8 and section 10—10 of the Code had been substantially complied with; (2) that strict compliance with notice to Johnson was rendered impossible by virtue of his failure to include a certificate of principal proponent with the petition; (3) that Johnson submitted to the jurisdiction of the Electoral Board by submitting the certificate designating him the principal proponent in this matter; and (4) that no prejudice resulted to Johnson as a result of the technical defect in the notice given to the circulators of the petition, parties who are not designated to receive notice under the Code.

Also on September 26, the plaintiffs filed a complaint for *mandamus* in circuit court. The complaint sought to compel the defendant to certify the referendum question for placement on the ballot for the November 7, 1995, election. On October 4, 1995, the trial court continued the cause, in part because the Electoral Board had not yet reached a final decision.

On October 9, 1995, the Electoral Board sustained Pannepucci's objection to the plaintiffs' petitions. The Electoral Board found that since the petitions as a whole were securely bound and were not consecutively numbered, despite each circulator's petition being so numbered, the petitions violated the requirements of section 28—3 of the Code (10 ILCS 5/28—3 (West 1994)) and were thus invalid.

The plaintiffs then filed an "amended *mandamus* complaint" to include allegations detailing the recent actions of the Electoral Board, as well as a challenge to Pannepucci's standing to file objections to the plaintiffs' petitions. At the evidentiary hearing on the amended complaint, defense counsel argued that neither the standing issue nor any request by the plaintiffs for judicial review of the Electoral Board's decision was properly before the court, as no appeal had been filed pursuant to section 10—10.1 of the Code (10 ILCS 5/10—10.1 (West 1994)). In response, plaintiffs' counsel argued that, even though the amended complaint was characterized as one in *mandamus*, the plaintiffs were in fact seeking review of the Electoral Board's decision. The court allowed the hearing to proceed on the amended com-

plaint as filed, but suggested to the plaintiffs that they consider whether they wanted to seek leave to file a second amended complaint to conform to any proofs presented at the hearing.

At the close of the plaintiffs' evidence, the defendant moved for a directed finding. After rejecting the standing claim, the court considered the issue of whether the plaintiffs had sufficiently established their claim for *mandamus.* In that regard, the court stated:

> "I don't think a mandamus action is appropriate to review a position or decision of an Electoral Commission, and so that portion of the Plaintiff's amended complaint that seeks mandamus will be denied.
>
> However, I think there are portions of the Plaintiff's complaint that will stand; specifically, the request for the review of the order of September 26th as it relates to a finding that the notice was defective, and as to their decision of October the 5th that Plaintiff's petitions were defective materially. There is evidence sufficient to withstand the motion for finding, and therefore that portion of the motion will be denied."

After the defendant elected not to present any evidence, the court entertained additional argument as to the merits of the Electoral Board's decision. The court then took the matter under advisement.

On October 12, 1995, the court rendered its decision. Noting that it had treated the complaint as a request for judicial review of the Electoral Board's decision, the court found the decision of the Electoral Board as it related to the pagination requirements of the petitions to be correct "if properly objected to." The court went on, however, to find that the Electoral Board's failure to properly notify the proponents of the location of the hearing on the objections rendered the hearing invalid. The court stated:

> "The statute is very clear, there shall be a notice given, and that notice has to include the time and the place.
>
> In this case, the Proponents did not file a Principal Proponent Statement, and I'm not sure that the Electoral Board at that point had to do anything or notify anyone, but once they chose to do so, I think they had to do it correctly.
>
> ***
>
> *** [O]nce they made the decision to move that meeting from the Courthouse, where the statute provides for it, to the Village Hall, I think they had an obligation to send their notices out correctly.
>
> They did not send those notices out correctly. Therefore, it is my opinion that in fact there was not ever conduct [*sic*] a proper Objectors' hearing."

Accordingly, the court entered an order dismissing the plaintiffs' prayer for a writ of *mandamus*, dismissing the portion of the complaint challenging Pannepucci's standing as an objector, and ordering the referendum question to be submitted to the voters at the March 1996 primary election.

On appeal, the defendant contends that the trial court erred in construing the notice provisions of section 10—10 of the Code (10 ILCS 5/10—10 (West 1994)) to be mandatory, rather than directory. As an initial matter, however, we must examine whether the trial court had jurisdiction to review the merits of the Electoral Board's decision.

■ Section 10—10.1 of the Code, which governs judicial review of electoral board decisions, provides, in pertinent part:

> "The party seeking judicial review must file a petition with the clerk of the court within 10 days after the decision of the electoral board. *** The petitioner shall serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail and shall file proof of service with the clerk of the court." 10 ILCS 5/10—10.1 (West 1994).

As our supreme court has noted, this review procedure is a statutory creation. *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 69 (1988). A court in the exercise of special statutory jurisdiction is limited in its power by the language of the act conferring such jurisdiction. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985). If the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court. *Fredman Brothers*, 109 Ill. 2d at 210.

It is clear in the case at bar that the plaintiffs did not comply with the provisions of section 10—10.1 in their challenge to the Electoral Board's decision. Notwithstanding the court's suggestion immediately prior to the evidentiary hearing, the plaintiffs never filed a second amended complaint to include a count seeking judicial review within 10 days of the Electoral Board's decision. Further, it is undisputed that the Electoral Board was never served or named as a party to the action. That the trial court chose to treat the plaintiffs' *mandamus* complaint as a request for judicial review is of no consequence, for the court was wholly without authority to do so. Because the court was limited in its jurisdictional authority by the review procedures set forth in section 10—10.1 of the Code and because the plaintiffs failed to strictly pursue those procedures, we conclude that the trial court had no jurisdiction to review the Electoral Board's decision on the merits.

The plaintiffs correctly assert, however, that we may affirm the

decision of the trial court on any basis appearing in the record (see *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983)). Accordingly, we must examine whether the trial court's rejection of the plaintiffs' claim for *mandamus* was proper.

■ A writ of *mandamus* is a remedy at law to command a public official to perform some ministerial, nondiscretionary duty. *Doe v. Carlson*, 250 Ill. App. 3d 570, 573 (1993). *Mandamus* will lie in order to expunge a decision which an election board lacked jurisdiction to enter. *Caldwell v. Nolan*, 167 Ill. App. 3d 1057, 1065 (1988).

■ In the case at bar, the plaintiffs' amended complaint alleged that the notice which the Electoral Board provided regarding the hearing on the objector's petition failed to include the location of the hearing. Under section 10—10 of the Code, the chair of the electoral board is required to send a call to the principal proponent or the attorney for the proponents of a question of public policy whose petitions are objected to, stating that the board is required to meet to hear and pass upon the objections and stating the day, hour, and place at which the board shall meet for that purpose. 10 ILCS 5/10—10 (West 1994). The plaintiffs argue that section 10—10's notice provisions are mandatory and that the Electoral Board's failure to act in strict compliance with those provisions thus deprived the Electoral Board of jurisdiction over the objection, rendering the Electoral Board's order sustaining the objections void.

■ A mandatory provision in a statute is one which the omission to follow renders the proceeding to which it relates illegal and void. *Shipley v. Stephenson County Electoral Board*, 130 Ill. App. 3d 900, 902 (1985). The observance of a directory provision, by contrast, is not necessary to the validity of the proceeding. *Shipley*, 130 Ill. App. 3d at 902. The question of whether a statute prescribing the performance of an act by a public body is mandatory or directory depends upon the statute's purpose. *Shipley*, 130 Ill. App. 3d at 902-03. As this court noted in *Shipley*, "[i]f the provision merely directs a manner of conduct for the guidance of the officials or is designed to secure order, system and dispatch in proceedings, it is generally directory, absent negative language denying the performance if the acts required are not done in the manner designated. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act in the manner specified, the statute is mandatory." *Shipley*, 130 Ill. App. 3d at 903. Stated another way, a mandatory statute will describe the consequences for failing to follow its provisions. *Maske v. Kane County Officers Electoral Board*, 234 Ill. App. 3d 508, 515 (1992).

In *Havens v. Miller*, 102 Ill. App. 3d 558 (1981), this court held

that section 10—10's requirement that notice be served both by registered or certified mail and by sheriff's service was not a mandatory but a directory provision of the statute. *Havens*, 102 Ill. App. 3d at 565. The *Havens* court stated that the provision for using two methods of serving notice was intended to increase the likelihood that interested parties would actually receive notice of the hearing. *Havens*, 102 Ill. App. 3d at 565. The court then noted that the plaintiff had in fact received notice of the objection by one of the two methods of service and, through counsel, had participated in the hearing on the objections. *Havens*, 102 Ill. App. 3d at 565. Moreover, the court observed that to find the notice requirements mandatory would, in effect, give the chair of an electoral board "absolute veto power" over objections simply by his or her choosing to serve notice in a manner different from that set forth in the statute. *Havens*, 102 Ill. App. 3d at 565. Finally, the court observed that the language of section 10—10 did not specifically state that the failure to strictly comply with the notice provision would result in a nullification of the electoral board's authority. *Havens*, 102 Ill. App. 3d at 565.

Relying on *Havens*, this court in *Shipley* found that the notice provisions of section 10—8 of the Code, which require that a copy of objections to a petition be transmitted by registered mail or receipted personal delivery to the principal proponent of the public question not later than 12 noon on the next business day following the filing of the objections (10 ILCS 5/10—8 (West 1994)), were likewise directory provisions. *Shipley*, 130 Ill. App. 3d at 902-03. The court noted that, while some notice to interested parties was mandatory under the statute, the manner and method of service prescribed therein were not. *Shipley*, 130 Ill. App. 3d at 903. The court also observed that no principal proponent of the referendum had been certified, making strict compliance with the notice provision of section 10—8 impossible. *Shipley*, 130 Ill. App. 3d at 903. The court thus reasoned that the failure to strictly comply with the provision was not the fault of the electoral board, but rather that of the plaintiff in question, who ostensibly drafted the referendum petitions and should have designated himself as the proponent. *Shipley*, 130 Ill. App. 3d at 903.

■ Unlike *Shipley* and *Havens*, the question here turns not on the provisions regarding the manner or method of service, but the substance of the notice given. The rationale of those cases, however, leads us to reject the plaintiffs' argument. Here, no principal proponent was designated until Johnson tendered his certificate to the Electoral Board at the September 18 hearing. Thus, as in *Shipley*, strict compliance with section 10—10's notice provisions was made

impossible by the plaintiffs' own failure to name a principal proponent with the submission of their petitions. Johnson, moreover, had actual notice of the location of the September 18 hearing and appeared there to object to the hearing on the grounds of defective notice. It was not until September 26 that the Electoral Board ruled on Johnson's objection, and not until the October 9 hearing that the Electoral Board considered and ruled—with Johnson present—on Pannepucci's objections to the petitions. Johnson has therefore failed to demonstrate what prejudice, if any occurred from the failure to notify him of the location of the initial hearing. Further, we note that the Electoral Board here did advise each of the circulators of the date and time of the initial hearing, providing them with at least some notice. See *Shipley*, 130 Ill. App. 3d at 903 ("some notice" to interested parties mandatory under the statute).

We are also persuaded by the argument that finding the notice provisions of section 10—10 to be mandatory could enable an electoral board to prevent any hearing on objections filed to a petition by the board's noncompliance with the notice requirements. See *Havens*, 102 Ill. App. 3d at 565; *Shipley*, 130 Ill. App. 3d at 903. This is particularly true where, as here, the statute provides no indication of the consequence for failing to follow its provisions. *Cf. Maske*, 234 Ill. App. 3d at 516 (section 10—10's failure to indicate the consequence for noncompliance with the time limits for holding hearings on an objector's petition could theoretically allow an electoral board to thwart the entire election process by scheduling the hearings outside the time frame).

In sum, we simply do not believe that the legislature intended for a defect in the notice, such as the one presented at bar, to have the result of nullifying the Electoral Board's authority. See *Maske*, 234 Ill. App. 3d at 516. We conclude, therefore, that the Electoral Board's failure to include the location of the initial hearing on the notices mailed to the circulators did not nullify the Electoral Board's action in sustaining the objections to the plaintiffs' petitions. Accordingly, we find that because the Electoral Board had jurisdiction over the objections to the petitions, no action for *mandamus* will lie.

For the foregoing reasons, the portion of the judgment of the circuit court of Kane County denying the plaintiffs' claim for *mandamus* is affirmed. The remaining portion of the judgment reviewing and reversing the decision of the Electoral Board is vacated for lack of jurisdiction.

Affirmed in part and vacated in part.

McLAREN, P.J., and DOYLE, J., concur.