No.  2--02--0239     

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In
 
re
 OBJECTION OF DAVID RUSSO   )  Appeal from the Circuit

TO THE PETITION FOR       )  Court of Du Page County.

PUBLIC QUESTION REFERENDUM   )

REGARDING THE ELECTION OF   )

VILLAGE TRUSTEES FROM DISTRICTS )

TO BE VOTED UPON AT THE MARCH   )

19, 2002, PRIMARY ELECTION
 ) 

     )  No. 02--MR--83

(David Russo, Petitioner, v. the ) 

Village of Winfield Municipal    ) 

Officers Electoral Board,   )

Respondent and Counterdefendant- )

Appellee (Mary E. Larson,   )

Respondent and Counterplaintiff- )

Appellant; John Kirschbaum,   )  Honorable

Jeni Ozark, and Rudy Czech,   )  Ronald B. Mehling,

Counterdefendants-Appellees)).   )  Judge, Presiding.

  

JUSTICE GEIGER delivered the opinion of the court:

The respondent, Mary Larson, appeals from the February 15, 2002, order of the circuit court of Du Page County dismissing her counterclaim against the Village of Winfield Municipal Officers Electoral Board (the Board) and its members, John Kirschbaum, Jeni Ozark, and Rudy Czech.  Larson's counterclaim sought a writ of 
mandamus
 requiring the Board to place a public question upon the March 19, 2002, primary election ballot.  The trial court dismissed the action, finding that an action for 
mandamus
 was precluded by the availability of judicial review under the Election Code (the Code) (10 ILCS 5/10--10.1 
(West 2000)).  We affirm.

Larson, a resident of the Village of Winfield (Village), has circulated a petition among the Village's voters for the placement of a referendum on the March 19, 2002, primary election ballot.  The referendum sought to change the manner of electing Village trustees from at-large elections, where trustees are selected by all of the Village's residents, to by-district elections, where the Village is divided up into districts and one trustee is selected from each district.  See 65 ILCS 5/3.1--25--80 (West 2000).  After obtaining the required number of signatures, Larson timely filed her petition with the Village's clerk on December 28, 2001.

David C. Russo, also a resident of the Village, filed several objections to Larson's petition.  The Board conducted a hearing on these objections on January 14, 2002.  On January 17, 2002, the Board filed its written order sustaining one of Russo's objections.  The Board ordered that Larson's petition be stricken and that the public question not appear on the ballot.

Despite prevailing in the proceedings before the Board, Russo filed a petition for judicial review of the Board's decision in the circuit court of Du Page County on January 24, 2002.  Russo's petition for review was filed pursuant to section 10--10.1 of the Code (10 ILCS 5/10--10.1 (West 2000)) and sought a review of those objections that were not sustained by the Board.  The Board and Larson were named as respondents in this action.

On January 25, 2002, Larson filed a counterclaim for a writ of 
mandamus
 and requested that the Board's decision be reversed and that the Board be ordered to certify the petition and place the referendum on the March 19, 2002, ballot.  The counterclaim, which consisted of three counts, alleged (1) that Russo lacked standing to raise objections to the petition; (2) the Board's decision was predicated upon speculation, rather than evidence; and (3) the Board's decision was without legal basis and against the manifest weight of the evidence.  The Board and its members were named as counterdefendants.

The Board and Russo filed motions to dismiss Larson's counterclaim pursuant to section 2--619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(1) (West 2000)).  These parties argued that the trial court was without jurisdiction to review the Board's decision in a 
mandamus
 action.  These parties instead argued that Larson was obligated to file an action for judicial review pursuant to the statutory authority provided by section 10--10.1 of the Code.  Because Larson's counterclaim did not seek review pursuant to section 10--10.1 and did not comply with the procedural requirements of that section, the Board and Russo asserted that the counterclaim should be dismissed.

On February 15, 2002, the trial court held a hearing on the motions to dismiss.  At the beginning of the hearing, Russo voluntarily dismissed his petition for judicial review of the Board's decision.  The trial court then proceeded with the hearing and granted the Board's motion to dismiss Larson's counterclaim.  The trial court found that Larson's sole method to seek judicial review of the Board's decision was through the procedure provided by section 10--10.1 of the Code.  Because Larson had filed an action for 
mandamus
 rather than comply with the requirements of section 10--10.1, the trial court found that it was without the authority to review the merits of the Board's decision.  After the denial of her motion to reconsider, Larson filed this timely notice of appeal.

On March 7, 2002, Larson filed a motion in this court for an expedited hearing and emergency interlocutory relief.  Larson requested that, due to the nearness of the March 19, 2002, primary election, this court enter an order requiring the referendum to be placed on the ballot.  On March 8, 2002, this court granted Larson's motion for an expedited hearing, but continued the motion for interlocutory relief until all the briefs had been filed.  The court has now had the opportunity to review the parties' briefs and is prepared to rule.

The dispositive issue on appeal is whether an action for 
mandamus
 is an appropriate means to seek judicial review of the Board's decision.  Larson argues that, in instances where there is insufficient time before an election to conduct judicial review under section 10--10.1 of the Code, an action for 
mandamus
 is an appropriate remedy to seek expedited judicial review.  Larson alternatively argues that, as the proponent of the referendum, she had no statutory basis to file a petition for judicial review under section 10--10.1.  The Board responds that section 10--10.1 was Larson's sole remedy to seek the review of its decision and that there was sufficient time prior to the election for the trial court to conduct such review.

The circuit court's power to review administrative action is limited to that provided by law.  Ill. Const. 1970, art. IV, §9; 
Kozel v. State Board of Elections
, 126 Ill. 2d 58, 69 (1988)
.   The review procedure contained in section 10--10.1 is a statutory creation, and compliance with the requirements of that section is necessary to invoke the circuit court's jurisdiction.  
Kozel
, 126 Ill. 2d at 69.  A party's failure to commence a timely proceeding for judicial review pursuant to section 10--10.1 of the Code deprives the trial court of jurisdiction to review the merits of the electoral board's decision.  
Kozel
, 126 Ill. 2d at 69-70; 
Johnson v. Theis
, 282 Ill. App. 3d 966, 971 (1996).  An action for a writ of 
mandamus
 is therefore insufficient to vest the trial court's jurisdiction to review the merits of the electoral board's decision.  
Johnson
, 282 Ill. App. 3d at 971.

In 
Johnson
, the proponent of a referendum filed a writ of 
mandamus
 requesting the trial court to direct the village clerk to certify the referendum for placement on the ballot.  
Johnson
, 282 Ill. App. 3d at 967.  The action was filed in response to the electoral board's decision to sustain certain objections to the proponent's petition.  
Johnson
, 282 Ill. App. 3d at 967.  The trial court rejected the 
mandamus
 claim, electing instead to treat the complaint as a request for judicial review of the electoral board's decision pursuant to section 10--10.1.  The trial court subsequently found that the electoral board's action was invalid due to its failure to comply with the notice provisions of the Code and ordered that the referendum question be certified and placed on the ballot.  
Johnson
, 282 Ill. App. 3d at 967.

On review, this court held that the trial court erred in treating the proponent's 
mandamus
 complaint as a request for  judicial review.  
Johnson
, 282 Ill. App. 3d at 971.  After noting that the trial court's special statutory jurisdiction was limited by the language of section 10--10.1, we explained:

"It is clear in the case at bar that the plaintiffs did not comply with the provisions of section 10--10.1 in their challenge to the Electoral Board's decision. *** That the trial court chose to treat the plaintiffs' 
mandamus
 complaint as a request for judicial review is of no consequence, for the court was wholly without authority to do so.  Because the court was limited in its jurisdictional authority by the review procedures set forth in section 10--10.1 of the Code and because the plaintiffs failed to strictly pursue those procedures, we conclude that the trial court had no jurisdiction to review the Electoral Board's decision on the merits."  
Johnson
, 282 Ill. App. 3d at 971.

This court further held that a trial court's authority in a 
mandamus
 action was limited to a consideration of whether the electoral board complied with its ministerial obligations as imposed by the provisions of the Code.  
Johnson
, 282 Ill. App. 3d at 968, 972.  Finding no evidence that the electoral board failed to perform a ministerial duty under the Code, we held that the trial court had no authority to disturb the electoral board's decision.  
Johnson
, 282 Ill. App. 3d at 974.

Applying these principles to the instant case, we conclude that the trial court correctly dismissed Larson's counterclaim for 
mandamus
.  The trial court was limited in its jurisdictional authority to those procedures set forth in section 10--10.1 of the Code.  Because Larson did not pursue these procedures, the trial court had no jurisdiction to review the Board's decision on the merits.  In a 
mandamus
 action, the trial court was limited to considering whether the Board complied with its ministerial obligations as imposed by the provisions of the Code.   
Johnson
, 282 Ill. App. 3d at 968, 972. Because the allegations of the counterclaim relate only to the merits of the Board's decision and do not allege that the Board failed to comply with its ministerial obligations, the trial court was without jurisdiction to consider the action.

In reliance on 
Dooley v. McGillicudy
, 63 Ill. 2d 54 (1976), Larson argues that 
mandamus
 was an appropriate action because there was insufficient time for the trial court to perform its review under section 10--10.1.  In 
Dooley
, a candidate for the Illinois Supreme Court was taken off the primary ballot after the electoral board found that his nominating petitions did not comply with the requirements of the Code.  
Dooley
, 63 Ill. 2d at 55-56.  The candidate filed an original action for 
mandamus
 in the supreme court, requesting that his name be placed back on the ballot.  
Dooley
, 63 Ill. 2d at 55.  Despite the candidate's failure to file for judicial review pursuant to section 10--10.1 of the Code, the supreme court nonetheless reviewed the petition for 
mandamus
 due to the impending election.  
Dooley
, 63 Ill. 2d at 58.  The electoral board issued its determination on January 13, 1976, and the date of the primary election was March 16, 1976.  The court explained that 
mandamus
 was an appropriate remedy in "situations which are of great import" and where the strict application of the doctrine of exhaustion of remedies "would lead to unjust or very harsh results."  
Dooley
, 63 Ill. 2d at 58.

However, the supreme court later declined to apply 
Dooley
 in 
Lara v. Schneider
, 75 Ill. 2d 63 (1979).  In that case, the court declined to consider a 
mandamus
 action filed by a candidate whose name had been removed from the ballot by the electoral board.  The candidate filed the 
mandamus
 action in the supreme court after the trial court upheld the decision of the electoral board on judicial review.  The trial court entered its order affirming the electoral board on February 13, 1979, and the primary election was to be held on February 27, 1979.  
Lara
, 75 Ill. 2d at 64.  Distinguishing its decision in 
Dooley
, the court held that 
mandamus
 was not a permissible substitute for direct appeal.  
Lara
, 75 Ill. 2d at 64.

In light of the supreme court's decision in 
Lara
, we question whether 
Dooley
 remains good law.  See 
Lara
, 75 Ill. 2d at 71 (Kluczynski, J., dissenting) (noting that the facts of 
Dooley
 did not differ in any material respect from those in 
Lara
).  However, assuming that 
Dooley
 continues to have precedential authority, we do not believe that it is comparable to the facts of the instant case.  Here, we believe that there was sufficient time for Larson to seek judicial review of the Board's decision prior to the election.  Indeed, Russo initiated the instant action pursuant to section 10--10.1 of the Code, and it is evident that the trial court was proceeding expeditiously to resolve the case prior to the election.   We therefore see no reason why Larson could not have taken advantage of the statutory remedy contained in section 10--10.1.

Moreover, unlike the situation in 
Dooley
, we do not believe that the question presented here was of such great import that the remedy of 
mandamus
 was necessary to avoid an unjust or a harsh result.  In 
Dooley
, the candidate was seeking election as a justice of the Illinois Supreme Court.  Vacancies for such a position are infrequent, and the election in question might have been the candidate's only opportunity to seek such an office.  In the instant case, although we do not dispute that the referendum was certainly a matter of public importance, we do not believe that the exclusion of the referendum from the primary ballot will necessarily constitute a harsh and unjust result
.  Larson will again have the opportunity to petition for the placement of the referendum in a future election.  Accordingly, we conclude that 
mandamus
 was not an appropriate means for Larson to seek judicial review of the Board's decision.

Larson alternatively argues that she could not file an action for judicial review under section 10--10.1 because that statute does not apply to proponents of a referendum.  Section 10--10.1 provides, in relevant part:

"Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held."  10 ILCS 5/10--10.1 (West 2000).

Larson contends that, pursuant to this statutory language, only candidates or objectors may seek judicial review.  Since Larson is neither, she concludes that she could not seek judicial review under section 10--10.1 and that 
mandamus
 was her sole available remedy.

We are unpersuaded by this argument.  The Code is divided into several different articles, each article dealing with a different aspect of elections.  For example, article 28 of the Code deals with submitting questions of public policy (10 ILCS 5/28--1 
et
 
seq.
 (West 2000)), while article 10 deals with the making of certain nominations for elected office (10 ILCS 5/10--1 
et
 
seq.
 (West 2000)).  Section 4 of article 28 concerns the manner in which objections to petitions for the submission of questions of public policy are to be handled.  That section provides that such matters shall be governed by the "provisions of Sections 10--8 through 10--10.1 relating to objections to nominating petitions, hearings on objections, and judicial review."  10 ILCS 5/28--4 (West 2000).

We believe that, because section 10--10.1 is contained in the article of the Code dealing with nominating petitions, the legislature only referred to candidates and objectors, as these would be the categories of individuals that would be involved in a proceeding for the judicial review of an electoral board's ruling on nominating petitions.  However, because the Code also provides that section 10--10.1 governs the judicial review of matters involving petitions to submit matters of public policy, we conclude that the legislature necessarily intended that proponents of a referendum have the right to petition for judicial review.  To hold otherwise would render section 28--4 superfluous.

Additionally, we are aware of no authority holding that a proponent of a referendum does not have the right to seek judicial review of an electoral board's decision pursuant to the provisions of section 10--10.1.  Indeed, as already discussed above, this court held in 
Johnson
 that a proponent's sole remedy to seek the judicial review of an electoral board's ruling on objections to petitions for the submission of a referendum is by filing an action pursuant to section 10--10.1.  We therefore reject Larson's assertion that she could not seek judicial review.

As her final argument on appeal, Larson attempts to reframe the allegations of her 
mandamus
 action by arguing that the law required the Village's clerk to certify the referendum pursuant to section 28--5 of the Code (10 ILCS 5/28--5 (West 2000)).  Section 28--5 provides that, not less that 61 days before the scheduled election, the local election official must certify the public questions to be submitted to the voters which have been initiated by the filing of petitions in the official's office.  10 ILCS 5/28--5 (West 2000).  Larson argues that, because the Board's decision did not become final until the time for filing a petition for judicial review had expired (10 ILCS 10/10--10 (West 2000)), the Village clerk had a ministerial duty to certify the referendum for placement on the ballot.  We decline to consider the merits of this contention because it was not raised in Larson's counterclaim for 
mandamus
.  As noted above, the three counts contained in her complaint solely attacked the merits of the Board's decision and did not request that the Village clerk be compelled to perform a ministerial duty.

In light of our conclusion that the trial court properly dismissed Larson's counterclaim, we need not address the other contentions raised by Larson on appeal.

For the foregoing reasons, Larson's motion for emergency interlocutory relief is denied, and the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and CALLUM, J., concur.