2021 IL App (2d) 210036
No. 2-21-0036
Opinion filed March 4, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| LYNDA SEGNERI, BARBARA LUKOF, GARY VICIAN, THOMAS LAZ, GABBY SERNA and BILL BREYNE, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 20-MR-1074 |
| JIM RUHL, in His Capacity as the Chairman of the Naperville Township Republican Organization; NATHANAEL J. SIPPEL, Naperville Township Clerk, in His Capacity as the Local Election Official for Naperville Township; and JEAN KACZMAREK, in Her Capacity as Du Page County Clerk and the Local Election Authority, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Jim Ruhl, in His Capacity as the Chairman of the Naperville Township Republican Organization and Nathanael J. Sippel, Naperville Township Clerk, in His Capacity as the Local Election Official for Naperville Township, Defendants-Appellants). | ) ) ) ) ) ) ) | Honorable James F. McCluskey, Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    This case involves a dispute over who should be the Republican candidates for seven positions in Naperville Township in the April 6, 2021, consolidated election. The six plaintiffs, Lynda Segneri, Barbara Lukoff, Gary Vician, Thomas Laz, Gabby Serna, and Bill Breyne filed in the circuit court of Du Page County a complaint for a declaratory judgment, a writ of *mandamus*, and injunctive relief. They sought to compel the chairman of the Naperville Township Republican Organization (NTRO), Jim Ruhl, to file on their behalf the necessary papers to make them candidates in the upcoming election. Their complaint also requested that Naperville Township's clerk, Nathanael Sippel, be compelled to certify their names as candidates to the Du Page County Clerk, Jean Kaczmarek. Following an evidentiary hearing, the circuit court issued a writ of *mandamus* and ordered Clerk Sippel to certify all six plaintiffs plus the two people Chairman Ruhl had filed nominating papers for, Matthew Rasche and Paul Santucci, as the Republican candidates in the upcoming election. Chairman Ruhl filed a notice of appeal from that order and Clerk Sippel joined in that appeal. For the reasons that follow, we vacate the trial court's order.

¶ 2                                I. BACKGROUND

¶ 3    Naperville Township has seven offices up for election in the April 6, 2021, consolidated election (supervisor, assessor, clerk, and four township trustees). On November 10, 2020, Chairman Ruhl notified Clerk Sippel that pursuant to section 45-10 of the Illinois Election Code (60 ILCS 1/45-10 (West 2018)), the NTRO would have its caucus on December 1, 2020, at the Naperville Township administration building. The caucus would open to the public at 6 p.m. and start at 7 p.m. On November 16, 2020, Clerk Sippel posted this announcement on the Naperville Township website.

¶ 4    On November 24, 2020, at an NTRO committeemen's meeting, Chairman Ruhl indicated that the rules for the caucus would be adopted by eligible voters at the caucus.

¶ 5    On November 29, 2020, Chairman Ruhl sent an e-mail "to friends and family" indicating that the caucus would take place online via Zoom. The proposed rules required all caucus participants to sign in person an affidavit of attendance. The proposed rules gave conflicting dates of November 6 and November 27, 2020, as the deadline by which those wishing to be candidates had to inform Chairman Ruhl.

¶ 6    On December 1, 2020, the plaintiffs appeared at the township offices before 7 p.m. and signed in as voters and participants in the caucus to select candidates for the township offices. The plaintiffs were handed the NTRO Rules of Procedure. The plaintiffs learned that the meeting would be conducted online via Zoom. This was particularly problematic for plaintiff Breyne because he had no devices that allowed him to participate electronically, and he did not have advance notice to make other arrangements.

¶ 7    Mike Urban went to the caucus and informed Chairman Ruhl that he wished to run as a candidate. Chairman Ruhl told him it was "too late" and sent him home.

¶ 8    After the plaintiffs were asked to leave, the doors to the township offices were closed. Chairman Ruhl then turned over the caucus proceedings to Warren Dixon III. The online caucus participants included at least two people who were never present at the township building to sign affidavits, including one who participated in the virtual caucus from Scottsdale, Arizona. Two candidates were presented for the voter's consideration: Matt Rasche for assessor and Paul Santucci for trustee. Dixon moved to close the nominations and was seconded by Chairman Ruhl. No further nominations were accepted at the caucus and a voice vote declared Rasche and Santucci as the Republican candidates for the April 2021 consolidated election.

¶ 9    Meanwhile, the six plaintiffs conducted a separate caucus in the parking lot of the township building. They voted themselves to be the candidates to represent the NTRO in the upcoming

April 2021 election. Specifically, they nominated Segneri to be the candidate for township supervisor; Lukoff to be the candidate for township clerk; Vician to be the candidate for township assessor; and Laz, Serna, and Breyne to be candidates for township trustee. The six plaintiffs subsequently requested Chairman Ruhl to file nominating papers on their behalfs to indicate that they were the Republican candidates in the upcoming election. He refused to do so.

¶ 10 On December 14, 2020, Chairman Ruhl filed the certificate of nomination of caucus certifying that Rasche and Santucci were nominated to be candidates in the upcoming election.

¶ 11 On December 18, 2020, the plaintiffs filed a four-count complaint for a declaratory judgment, a writ of *mandamus*, and injunctive relief. Count I sought a declaration that their caucus was the lawful caucus and that the virtual caucus was not. Count II was a *mandamus* action that requested Chairman Ruhl be compelled to certify their names to the local election official. Counts III and IV sought a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent Chairman Ruhl from nominating anyone other than themselves to be the Republican candidates in the upcoming election. (The plaintiffs subsequently dismissed counts III and IV of their complaint when they learned that Chairman Ruhl had already submitted the nominating papers for Rasche and Santucci). The complaint named Clerk Sippel and Clerk Kaczmarek in their official capacities as the local election officials because the ultimate relief sought by the six plaintiffs (to have their names printed on the ballot) would require actions on their parts.

¶ 12 On December 21, 2020, Vician attempted to file a certificate nominating the six plaintiffs to be candidates in the April 6, 2021, election. Clerk Sippel did not accept Vician's nominating papers.

¶ 13    On January 6, 2021, Chairman Ruhl and Clerk Sippel filed separate motions to dismiss the plaintiffs' complaint.  Chairman Ruhl argued that, pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2018)), the complaint should be dismissed because the plaintiffs had failed to name everyone who would be affected by their action, such as those who had been nominated to be candidates—Rasche and Santucci.  He also argued that the complaint should be dismissed because (1) the plaintiffs' claims that the caucus was not properly conducted were without merit; and (2) the plaintiffs had an adequate remedy at law under section 10-8 and 10-10 of the Election Code.  Clerk Sippel argued that pursuant to section 2-619 of the Code (*Id.* § 2-619), the plaintiffs' complaint should be dismissed (1) based on the doctrine of laches and (2) because it was improper under section 20 of the Township Code (60 ILCS 1/45-20 (West 2018)).

¶ 14    On January 22, 2021, the circuit court denied both Chairman Ruhl's and Clerk Sippel's motions to dismiss.  On January 27, 2021, the trial court conducted an evidentiary hearing on the plaintiff's complaint.  On January 28, 2021, the circuit court entered a short order that ordered Clerk Sippel to certify Rasche, Santucci, and the six plaintiffs as candidates for the April 2021 election. The circuit court indicated that a longer order with an explanation would be forthcoming shortly.

¶ 15    On January 29, 2021, Chairman Ruhl filed a timely notice of appeal.  Clerk Sippel joined this appeal.  On February 4, 2021, this court granted Chairman Ruhl's motion pursuant to Illinois Supreme Court Rule 311 (eff. July 1, 2018) to place the case on this court's accelerated docket.  Also, on February 4, the plaintiffs filed a motion to conform their pleadings to the proof pursuant to 2-616(c) of the Code (735 ILCS 5/2-616(c) (West 2018)) and add Rasche and Santucci as defendants.  The circuit court granted that motion.

¶ 16    On February 5, 2021, the circuit court entered a supplemental order setting forth its rationale for ordering that the plaintiffs appear on the ballot along with Rasche and Santucci. The trial court explained that the plaintiffs were not informed of the November 6, 2020, deadline for informing Chairman Ruhl that they wished to be candidates. They were also given no advance notice of the rules Chairman Ruhl intended to use at the caucus. The trial court found that the Zoom caucus "was held in blatant contravention [of] the Township Code and of the Governor's Executive Order 2020-73 which exempts Township Caucuses from electronic means." The trial court concluded that the "Zoom caucus was not properly conducted in a fair and honest manner."

¶ 17                    II. ANALYSIS

¶ 18            A. Plaintiffs' Motion to Dismiss Clerk Sippel's Appeal

¶ 19    At the outset, we note that the plaintiffs have filed a motion to dismiss Clerk Sippel's appeal and strike his memorandum in lieu of brief. The plaintiffs argue that Clerk Sippel was just a nominal defendant who should have no interest in the case's outcome. They further analogize the clerk's role in this case to that of an electoral board and point out that boards lack standing to prosecute an appeal. Additionally, the plaintiffs argue that Clerk Sippel's brief should be stricken because it "wholly consists of arguments raised for the first time on appeal." All of the plaintiffs' arguments are without merit.

¶ 20    The clerk's role in a *mandamus* action such as this one is not nominal. Rather, he serves as a "gatekeeper" to the ballot certification process. See *North v. Hinkle*, 295 Ill. App. 3d 84, 89 (1998) (clerk has no obligation to certify nominating papers that do not conform with the Election Code). As such, unlike an electoral board, he may defend or even prosecute an appeal regarding certification of nominating papers. Compare *Kozenczak v. Du Page County Officers Electoral Board*, 299 Ill. App. 3d 205, 207 (1998) (holding that administrative agencies must remain

impartial and cannot simultaneously serve as impartial adjudicators while also appealing reversals of their own decisions) with *Haymore v. Orr*, 385 Ill. App 3d 915, 916 (2008) (clerk had standing to appeal the circuit court's order that compelled him to certify a question of public policy to the ballot that was not in apparent conformity with the Election Code).

¶ 21 Furthermore, we note that the issues that Clerk Sippel raises on appeal are consistent with those he raised in his motion to dismiss the plaintiffs' complaint. The plaintiffs have no basis for feigning surprise at the arguments he raises now. For all of these reasons, we deny the plaintiffs' motion to dismiss Clerk Sippel's appeal and strike his brief.

¶ 22 B. Plaintiffs' Failure to File Objections with Electoral Board

¶ 23 Turning to the merits, we first must consider whether, as Chairman Ruhl argued below, the plaintiffs were required to initially file objections before the township electoral board before bringing their action in the circuit court. The defendants insist that *all* election disputes must first be brought before an electoral board. The plaintiffs argue, however, that the Election Code only requires objections to nomination papers to be brought before the electoral board. Because Chairman Ruhl never filed any nominations on their behalf, the plaintiffs contend that there was nothing they could object to before the electoral board. Thus, they maintain that it was proper for them to initiate their action in the circuit court.

¶ 24 This issue presents us with a matter of statutory interpretation.

"The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. The statute should be evaluated as a whole, with each provision construed in connection with every other section. [Citations]. When the statutory language is clear, no resort is necessary to other

tools of construction. [Citations]. Where the meaning of a statute is ambiguous, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute." *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.*, 228 Ill. 2d 200, 216-17 (2008). The issue of statutory interpretation is reviewed *de novo*. *Dome Tax Services Co. v. Weber*, 2019 IL App (3d) 170767, ¶ 10.

¶ 25    Section 10-8 of the Election Code provides:

"Certificates of nomination and nomination papers, and petitions to submit public questions to a referendum, being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question[.]

* * *

Any legal voter of the political subdivision or district in which the candidate or public question is to be voted on, or any legal voter in the State in the case of a proposed amendment to Article IV of the Constitution or an advisory public question to be submitted to the voters of the entire State, having objections to any certificate of nomination or nomination papers or petitions filed, shall file an objector's petition together with 2 copies thereof in the principal office or the permanent branch office of the State Board of Elections, or in the office of the election authority or local election official with whom the certificate of nomination, nomination papers or petitions are on file." 10 ILCS 5/10-8 (West 2018).

Section 10-9 of the Election Code states that "electoral boards are designated for the purpose of hearing and passing upon the objector's petition described in Section 10-8." *Id.* § 10-9. Section 10-10 of the Election Code provides:

"The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers or petitions are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers or petitions which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10-10.1. The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained. A copy of the decision shall be served upon the parties to the proceedings in open proceedings before the electoral board. If a party does not appear for receipt of the decision, the decision shall be deemed to have been served on the absent party on the date when a copy of the decision is personally delivered or on the date when a copy of the decision is deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to each party affected by the decision or to such party's attorney of record, if any, at the address on record for such person in the files of the electoral board." *Id.* § 10-10 (West 2018).

¶ 26    As set forth above, section 10-8 provides the procedure for objecting "to *any* certificate of nomination or nomination papers or petitions filed." *Id.* § 10-8 (West 2018). Section 10-8 does

not indicate that the procedure it sets forth applies only if specific nomination certificates are filed. Rather, it uses the term "any." *Id.* Section 10-8 further provides that the filing of such objections is mandatory. *Id.* Section 10-10 states that "the electoral board shall take up the question as to *** whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it." *Id.* § 10-10. Here, Chairman Ruhl filed nominating certificates on behalf of Santucci and Rasche. Therefore, it was incumbent upon the plaintiffs to file objections to those nominating papers as not accurately reflecting the decision of the NTRO caucus. Section 10-10 clearly empowered the electoral board to review the issues here, namely which of the two competing caucuses on December 1, 2020, was the actual NTRO caucus and if the certificate filed by Ruhl was valid and complete.

¶ 27   For the circuit court to have jurisdiction over the plaintiff's complaint, the plaintiffs needed to comply with section 10-10.1(a) of the Election Code. That section provides:

> "(a) Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall file proof of service with the clerk of the court. No answer to the petition need be filed, but the electoral board shall cause the record of proceedings before the electoral board to be filed with the clerk of the

court on or before the date of the hearing on the petition or as ordered by the court." *Id.* § 10-10.1(a).

¶ 28 A circuit court's power to review administrative action is limited to that provided by law. Ill. Const.1970, art. IV, § 9; *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 69 (1988). The review procedure in section 10-10.1 is a statutory creation, and compliance with that section's requirements is necessary to invoke a circuit court's jurisdiction. *Kozel*, 126 Ill. 2d at 69. If the procedure prescribed by statute is not strictly pursued in the exercise of special statutory jurisdiction, circuit courts lack jurisdiction. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 16. Therefore, an action for a writ of *mandamus* is insufficient to vest a trial court's jurisdiction to review the merits of an electoral board's decision. *In re Russo*, 331 Ill. App. 3d 111, 114 (2002).

¶ 29 Here, the plaintiffs could not comply with section 10-10.1 of the Election Code, because they never filed any objections before the electoral board to the certificates nominating Santucci and Rasche. As the plaintiffs did not comply with section 10-10.1 of the Election Code, the circuit court lacked jurisdiction to consider their complaint. See *Bettis*, 2014 IL 117050, ¶ 16.

¶ 30 Based on our resolution of this issue, we need not address the other arguments that the defendants raise on appeal.

¶ 31                                          III. CONCLUSION

¶ 32 For the foregoing reasons, we vacate the judgment of the circuit court of Du Page County ordering Clerk Sippel to certify the plaintiffs as candidates in the April 2021 election. We therefore direct Clerk Sippel to file with County Clerk Kaczmarek an amended certification without the names of the plaintiffs as candidates for township offices and for County Clerk Kaczmarek to accept that amended certification. We further order County Clerk Kaczmarek to (1) suppress the report of votes cast in the April 6, 2021, election for the plaintiffs; (2) canvass the total votes cast

for all candidates whose names properly appear on the official ballot for the Naperville Township offices, exclusive of the plaintiffs; and (3) certify the official results of the April 6, 2021, election for the Naperville Township offices for those candidates who secured the highest number of votes for the offices they seek, exclusive of the plaintiffs.

¶ 33    Order vacated with instructions.